ALASKA RIGHT TO LIFE POLITICAL ACTION COMMITTEE; Michael W. Miller, Plaintiffs–Appellees,

v.

Jeffrey M. FELDMAN; Nancy Nolan; Patricia Collins; Ben J. Esch; Thomas Nave; Peter Aschenbrenner; Richard L. Burton; Ethel L. Staton, Defendants–Appellants,

Steve Van Goor, Defendant–Appellee.

Alaska Right to Life Political Action Committee; Michael W. Miller, Plaintiffs–Appellants,

v.

Jeffrey M. Feldman; Nancy Nolan; Patricia Collins; Ben J. Esch; Thomas Nave; Peter Aschenbrenner; Richard L. Burton; Ethel L. Staton; Steve Van Goor, Defendants–Appellees,

and

Mark Woelber; Louise Driscoll; Deborah Ricker; Gail Welt; Annette Ravithis, Defendants.

Nos. 05–35902, 05–36027.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 6, 2007.

Filed Sept. 21, 2007.

James Bopp, Jr., Thomas J. Marzen, Anita Y. Woudenberg, Terre Haute, Indiana, and William F. Sherman, Anchorage, AK, for plaintiffs-appellants Alaska Right to Life Political Action Committee and Michael Miller.

Jan Hart DeYoung, Anchorage, AK, for defendants-appellants Jeffrey M. Feldman, Nancy Nolan, Patricia Collins, Ben J. Esch, Thomas Nave, Peter Aschenbrenner, Richard L. Burton, and Ethel L. Staton.

Neil T. O'Donnell, Anchorage, AK, for defendant-appellee Steve Van Goor.

Before: J. CLIFFORD WALLACE, JOHN T. NOONAN, and RICHARD A. PAEZ, Circuit Judges.

PAEZ, Circuit Judge:

In October 2002, the Alaska Right to Life Political Action Committee ("ARL PAC") circulated a questionnaire to the twelve Alaska state court judges who were seeking retention votes in the then-upcoming November 2002 election. The questionnaire solicited the judges' views on a variety of legal and political issues such as abortion and assisted suicide. Only four judges responded. None indicated a view with respect to any of the positions listed in the questionnaire but all provided explanations for their decisions not to participate, including concern that responding would require subsequent recusal, provi-

sions of the Alaska Code of Judicial Conduct ("Code") that prohibit judges from pledging, promising, or committing to particular conduct in judicial office, one judge's personal code of judicial ethics, and "advice from Judicial Conduct Commission in my state."

In October 2004, approximately one month prior to Alaska's 2004 general election, ARL PAC and individual plaintiff-appellant Michael Miller (collectively "Plaintiffs") brought suit against eight named members of the Alaska Commission on Judicial Conduct ("Commission") and six named members of the Disciplinary Board of the Alaska Bar Association ("Bar"), challenging the constitutionality of three provisions in the Alaska Code of Judicial Conduct ("Code"): (1) requiring disqualification from any proceeding in which a judge's impartiality might reasonably be questioned; (2) prohibiting judicial candidates from making pledges or promises of particular conduct in judicial office; and (3) restricting statements that commit or appear to commit a judicial candidate to a particular view or decision regarding a case likely to come before the court. ARL PAC and Miller alleged that the two canons containing these three restrictions chilled judicial candidates from responding to their survey, in violation of the First Amendment. ARL PAC did not circulate a questionnaire to any of the ten judges who were seeking retention in the 2004 election prior to the filing of the Complaint, and neither the Commission nor the Bar ever threatened to enforce any provision of the Code against judges who might have chosen to respond to such a questionnaire. The district court nonetheless concluded that ARL PAC and Miller's suit was justiciable. On the merits, the court invalidated the canon that prohibits pledges and promises of conduct in judicial office and statements that commit or ap-

pear to commit a judicial candidate to a particular view or decision but rejected Plaintiffs' challenge to the canon requiring disqualification from proceedings in which a judge's impartiality might reasonably be questioned. The parties cross-appealed. ARL PAC and Miller also appealed the district court's orders denying their motion for attorneys' fees and costs against the Commission and granting Defendant–Appellee Steve Van Goor's motion for attorneys' fees and costs against Plaintiffs.

Because ARL PAC and Miller's constitutional challenges were not ripe, we vacate the district court's order and judgment and remand with instructions to dismiss. Without a more fully developed factual record, including evidence of some real threat of enforcement, and without a showing that withholding federal adjudication would impose hardship on Plaintiffs, we conclude that the district court should have declined jurisdiction for lack of a justiciable case or controversy. This conclusion renders moot Plaintiffs' appeal from the order denying its motion for attorneys' fees and costs against the Commission and their motion to dismiss the portion of their appeal regarding their challenge to the constitutionality of Alaska's disqualification clause. We affirm the district court's order granting attorney's fees and costs to Van Goor.

## I.

Alaska selects its Supreme Court justices and lower court judges through a nomination and appointment procedure. When a vacancy arises on the state bench, the Alaska Judicial Council ("Council")[1] nominates two or more candidates, one of whom the governor then appoints to the position. Alaska Const. art. IV, § 5. Justices and judges are subject to a nonpartisan retention vote during the first general election that takes place more than three years after their appointment to the bench. *Id.* § 6.[2] Thereafter, each Justice stands for retention every ten years and each judge stands for retention every six years. *Id.*

Among its other duties, the Alaska Supreme Court is charged with "mak[ing] and promulgat[ing] rules governing the administration of all courts," *id.* § 15, including the Alaska Code of Judicial Conduct. These two appeals concern two canons of the Code: Canon 3E(1), which requires that "a judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned," and Canon 5A(3)(d), which establishes that:

> [a] candidate for judicial office [3] ... (d) shall not: (i) make pledges or promises of conduct in judicial office other than to faithfully and impartially perform the duties of the office; (ii) make statements that commit or appear to commit the candidate to a particular view or decision with respect to cases, controversies

---

1. The Council comprises three attorneys who are selected by the governing body of the state bar; three non-attorneys who are appointed by the governor; and the Chief Justice of the Alaska Supreme Court. *See* Alaska Const. art. IV, § 8.

2. The Alaska Constitution only provides for the Supreme Court and the Superior Courts. The Court of Appeals and the district court were separately established by statute; similar merit selection procedures to those established in Article IV of the Alaska Constitution for Supreme Court justices and Superior Court judges apply to judges on these two other courts. *See* http://www.ajs.org/js/AK—methods.htm (explaining selection and retention procedures).

3. The commentary to the canons defines a candidate for judicial office as one "seeking selection for or retention in judicial office, whether by election or appointment."

or issues that are likely to come before the court.

Subclause (i) of Canon 5A(3)(d) is commonly referred to as a "pledge and promise clause;" subclause (ii) is known as a "commit clause." Only the Alaska Supreme Court may impose sanctions against judges for violations of the Code, *see* Alaska Stat. §§ 22.30.011(d)(1)(2), 22.30.070(b); that court therefore has exclusive authority definitively to interpret the Code's provisions.

The Commission,[4] however, bears the initial burden of investigating allegations of judicial misconduct, including alleged violations of the Code. Alaska Stat. § 22.30.011(a), (b). After conducting an investigation and hearing, the Commission may either exonerate the judge or "refer the matter to the supreme court with a recommendation that the judge be reprimanded, suspended, removed, or retired from office or publicly or privately censured by the supreme court." *Id.* § 22.30.011(d). In addition to its investigation and recommendation duties, Rule 19(a) of the Commission's Rules of Procedure authorizes, but does not require, the Commission to issue a formal advisory opinion upon written request of a state judicial officer; such an opinion provides an absolute defense in any subsequent disciplinary proceedings based on that conduct. Pursuant to Rule 19(d), however, informal verbal guidance provided by Commission members and staff has no legal effect and does not provide a recognized defense to a later disciplinary charge.

The Disciplinary Board of the Alaska Bar Association is an entirely separate entity charged with "supervis[ing] the investigation of all complaints against attorneys." Bar Counsel R. 10(c)(1)(2); *see also* Bar Counsel R. 11(a)(7) (providing that appointed Bar Counsel will "investigate alleged misconduct of attorneys"). While the Bar has authority to enforce Alaska Rule of Professional Conduct 8.2(b), which requires that lawyers who are candidates for judicial office "comply with the applicable provisions of the Code of Judicial Conduct," and therefore derivatively to interpret the Code of Judicial Conduct, it has never done so. This power presumably applies only prior to an individual attorney's initial appointment to the bench, as a judicial candidate seeking a retention vote is already a judicial officer subject to the Commission's enforcement of the Code.

In October 2002, ARL PAC, which describes itself as "a not-for-profit membership corporation organized to provide assistance to the unborn child and to promote social welfare and the common good and general welfare of the people of the States of Alaska," circulated a questionnaire to the twelve judges who were seeking retention in the upcoming November 2002 election. The questionnaire listed nine positions relating to abortion, assisted suicide, in vitro fertilization and cloning, wrongful life, and wrongful birth and asked respondents to check "Agree," "Disagree," "Undecided," or "Decline" in response to each position.[5] A footnote to the "Decline" option

---

4. The Commission consists of nine members: three state court justices or judges, three bar members who have practiced law in Alaska for at least ten years, and "three persons who are not judges, retired judges, or members of the state bar." Alaska Stat. art. IV, § 10.

5. One item on abortion, for example, asked candidates to indicate their position with respect to this statement: "Recognizing the judicial obligations to follow binding precedents of higher courts and applicable constitutional and statutory provisions, to honor stare decisis, and to decide any future case based on the law and facts of that case, in accord with

stated that checking this response indicated the judge's good faith belief that "under a reasonable construction of applicable Canons of Judicial Conduct or because my recusal would be subsequently required, I must decline to respond to this particular question." A cover letter from ARL PAC's executive director Karen Vosburgh explained the organizations's intention to "inform interested voters of your response" and further stated that "if you choose not to respond to our questionnaire, we will advise our members to vote for non-retention."

On October 16, 2002, the Commission's executive director Marla Greenstein sent Vosburgh a letter that expressed her "concerns with Alaska judges responding to the questionnaire in any other way than 'decline.' " [6] In Greenstein's view,

> questions that reflect a pre-judgment of a controversial issue or a judicial philosophy that could predict the outcome in a case are to be avoided. So too, questions that, if answered, are likely to lead to disqualification.... It is my professional opinion that judges who answer the questions in your questionnaire would be creating situations that would require them to be disqualified from sitting on cases involving those issues.

Greenstein also referenced the United States Supreme Court's decision in *Republican Party of Minnesota v. White*, 536 U.S. 765, 122 S.Ct. 2528, 153 L.Ed.2d 694

(2002), which struck down a provision of Minnesota's code of judicial conduct that forbid any candidate for judicial office from " 'announc[ing] his or her views on disputed legal or political issues.' " *Id.* at 768, 122 S.Ct. 2528. Greenstein noted that the Alaska Code did not contain such a clause, that distinguishable provisions of the Alaska Code restricted judicial speech, and that *White* arose in the context of a contested judicial election scheme rather than Alaska's non-partisan retention scheme. Greenstein copied this letter to all Alaska judges.

Of the twelve questionnaires it distributed, ARL PAC received four responses. Justice Walter Carpeneti checked "Decline" in response to each question and, on each page of the questionnaire, handwrote "might" in place of "would" in the footnoted phrase "my recusal would be subsequently required." In an accompanying letter, which, like Greenstein's letter was dated October 16, 2002, Justice Carpeneti explained, "I am not at all certain that responding to your group's questions is allowed under the Alaska code and that it would not subject me to later recusal." He did, however, list three cases in which he participated as an Alaska Supreme Court justice that "rais[ed] some of the issues covered in your questionnaire."

Judge Charles R. Pengilly checked "Decline" in response to all nine questions and submitted a letter, also dated October 16,

---

the position of the Alaska Right to Life Committee, I believe that the unborn child is biologically human and alive and that the right to life of human beings should be respected at every stage of their biological development." The item relating to in vitro fertilization asked for candidates' position vis-à-vis the following: "Recognizing the judicial obligation to follow binding precedents of higher courts and applicable constitutional and statutory provisions, to honor stare decisis, and to decide any future case based on the law and

facts of that case, in accord with the position of the Alaska Right to Life Committee, I believe that human beings whose lives begin by in vitro fertilization or cloning and who exist outside the body of a woman are not personal property and should be treated in accord with their best interests in any dispute over their disposition."

**6.** The record does not reflect how Greenstein learned about the questionnaire.

2002, expressing his uncertainty as to whether the Supreme Court's decision in *White* had any impact on the constitutionality on Alaska's own Code of Judicial Conduct. He also relayed that he had discussed the questionnaire with Greenstein, who "shares my ambivalence about the impact of *White* ... but does advise against responding to your questions on the ground that recusal would be required in the event any of these issues come [sic] before the court." He concluded, "I hesitate to answer only because it is far from clear that judges in Alaska have that freedom [to discuss the issues in the questionnaire]." [7]

Judge Sigurd E. Murphy did not complete the questionnaire but submitted a letter, dated October 24, 2002, announcing his decision to "decline to respond to your questionnaire generally for the reasons set forth in the October 16, 2002 letter addressed to you from the Alaska Commission on Judicial Conduct." Judge Murphy also expressed his view that responding to the questionnaire would violate his own " 'Judges' Code' which I prepared and have given to attorneys and others interested in my view of the judicial ethics that I live by."

Judge Jane Kauvar returned the questionnaire, checking "Decline" in response to each question. At the end of the questionnaire Judge Kauvar wrote simply: "Based on advice from Judicial Conduct Commission in My State." No judge sought a formal advisory opinion from the Commission.

ARL PAC chose not to publish any of these responses; nor did it distribute a questionnaire to any of the ten judges who sought retention in the next general elec-

tion, which took place in November 2004. Instead, on October 1, 2004, ARL PAC and Miller, "an individual and resident of the State of Alaska," filed a 42 U.S.C. § 1983 action in the United States District Court for the District of Alaska against eight named members of the Commission and six named members of the Bar, all sued in their official capacities. The Complaint raised First Amendment challenges to Alaska Canons 3E(1) and 5A(3)(d)(i) and (ii), asserting that the former was unconstitutional on its face and that both were unconstitutional as applied to the "2004 questionnaire." [8] ARL PAC and Miller also asserted that the Commission's enforcement policy of both canons, as expressed in Greenstein's October 16, 2002, letter, unconstitutionally chilled protected political speech. Alleging injury to Plaintiffs' rights to receive—and in ARL PAC's case also to distribute—judicial campaign speech, the Complaint sought declaratory and injunctive relief, costs and attorneys' fees.

After ARL PAC voluntarily dismissed all Bar members except Defendant Van Goor, who serves Bar Counsel, Van Goor filed a motion to dismiss the claims against him. The district court granted the motion, in light of Plaintiffs' concession that their lawsuit did not involve attorney-applicants and that Van Goor had no authority to enforce the Code against judicial officers.

The Commission and ARL PAC and Miller then filed cross-motions for summary judgment on the First Amendment challenges to Canons 3E(1) and 5A(3)(d)(i) and (ii). The district court held that ARL PAC and Miller's claims were justiciable

---

**7.** Judge Pengilly subsequently retired from the bench.

**8.** Although the Complaint repeatedly referred to the "2004 questionnaire," as noted, ARL PAC never distributed a questionnaire in 2004.

and that abstention was "neither warranted nor appropriate." *ARL PAC v. Feldman,* 380 F.Supp.2d 1080, 1082 (D.Alaska 2005). On the merits, the district court held that Canon 5A(3)(d)(i) and (ii) violated the First Amendment but that Canon 3E(1) was constitutional. *Id.* at 1083–84. In a post-judgment order, it denied ARL PAC and Miller's motion for costs and attorneys' fees pursuant to 42 U.S.C. § 1988 on grounds that their successful challenge to Canon 5A(3)(d)(i) and (ii) "was significantly compromised by their lack of success" in challenging the recusal clause in Canon 3E(1). In a separate order the district court granted in part Van Goor's § 1988 motion for costs and attorneys' fees.

The Commission timely appealed the district court's summary judgment invalidating Canon 5A(3)(d)(i) and (ii) in No. 05–35902. ARL PAC and Miller timely appealed the district court's summary judgment upholding Canon 3E(1), denying their motion for fees and costs against the Commission, and awarding fees and costs to Van Goor in No. 05–36027. After briefing for this appeal was complete, ARL PAC and Miller filed a motion to dismiss the portion of their appeal in No. 05–36027 challenging the district court's judgment as to the constitutionality of Canon 3E(1). In light of our conclusion that Plaintiffs' claims are not ripe and that the district court should have declined jurisdiction over their cause of action, we deny the motion as moot.

## II.

The district court had original jurisdiction under 28 U.S.C. § 1331. We have jurisdiction over the parties' timely cross-appeals under § 1291.

We review *de novo* a district court's grant of summary judgment, *Delta Sav. Bank v. United States,* 265 F.3d 1017, 1021 (9th Cir.2001), including legal determinations regarding standing and ripeness, *Cal. Pro–Life Council, Inc. v. Getman,* 328 F.3d 1088, 1093 (9th Cir.2003). We review the grant or denial of attorneys' fees under 42 U.S.C. § 1988 for abuse of discretion. *Maag v. Wessler,* 993 F.2d 718, 719 (9th Cir.1993).

## III.

Federal jurisdiction is limited to "actual 'cases' and 'controversies.'" *Allen v. Wright,* 468 U.S. 737, 750, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984). This principle of justiciability has both constitutional and prudential components. *See id.* at 750–51, 104 S.Ct. 3315 (explaining justiciability doctrines). Relevant here are the doctrines of standing and ripeness.

Article III standing is a "controlling element[ ] in the definition of a case or controversy." *Hein v. Freedom Religion Found. Inc.,* —— U.S. ——, 127 S.Ct. 2553, 2562, 168 L.Ed.2d 424 (2007) (internal quotation marks omitted). At an "irreducible constitutional minimum," Article III standing requires proof (1) that the plaintiff suffered an injury in fact that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical;" (2) of a causal connection between that injury and the complained-of conduct; and (3) that a favorable decision will likely redress the alleged injury. *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). In addition to these Article III requirements of injury in fact, causation, and redressibility, prudential standing concerns require that we consider, for example, whether the alleged injury is more than a "mere generalized grievance," whether the plaintiff is asserting her own rights or the rights of third parties, and whether the claim "falls within the zone of interests to be protected

or regulated by the constitutional guarantee in question." *See Johnson v. Stuart,* 702 F.2d 193, 196 (9th Cir.1983) (internal quotation marks omitted).

■■■ Like standing, the ripeness doctrine has both constitutional and prudential components. *See Nat'l Park Hospitality Ass'n v. Dep't of the Interior,* 538 U.S. 803, 808, 123 S.Ct. 2026, 155 L.Ed.2d 1017 (2003) ("The ripeness doctrine is 'drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction.'" (quoting *Reno v. Catholic Soc. Servs., Inc.,* 509 U.S. 43, 57 n. 18, 113 S.Ct. 2485, 125 L.Ed.2d 38 (1993))). For purposes of a preenforcement challenge such as ARL PAC and Miller's, the constitutional ripeness inquiry focuses on

> (1) whether the plaintiffs have articulated a concrete plan to violate the law in question, (2) whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings, and (3) the history of past prosecution or enforcement under the challenged statute.

*Getman,* 328 F.3d at 1094 (internal quotation marks omitted).[9] Prudential ripeness, in turn, involves "two overarching considerations: the fitness of the issues for judicial review and the hardship to the parties of withholding court consideration." *Thomas,* 220 F.3d at 1141(internal quotation marks omitted).

For the reasons that follow, we conclude that the district court should have declined to exercise jurisdiction on prudential ripeness grounds, given the inadequately developed record and the absence of a showing that withholding jurisdiction would impose hardship on the parties. As a result, we need not reach the question of Plaintiffs' standing. *See Arizonans for Official English v. Arizona,* 520 U.S. 43, 66–67, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997) (explaining that a court may properly assume standing in order to analyze mootness because both questions "go[ ] to the Article III jurisdiction of this Court and the courts below, not to the merits of the case").

## A.

■■■ In considering whether the record before us is fit for review, we begin with the principle that a court cannot decide constitutional questions in a vacuum. *See Thomas,* 220 F.3d at 1141. While "pure legal questions that require little factual development are more likely to be ripe," a party bringing a preenforcement challenge must nonetheless present a "concrete factual situation ... to delineate the boundaries of what conduct the government may or may not regulate without running afoul" of the Constitution. *San Diego County Gun Rights Comm. v. Reno,* 98 F.3d 1121, 1132 (9th Cir.1996). We lack such a "concrete factual situation" here. Although Alaska Statute section 22.30.011(a)(3)(E) authorizes the Commission, on its own motion or upon receipt of a written complaint, to inquire into an allegation that a judge has acted in violation of the Code, the record here does not show that the Commission has so much as contemplated that such an inquiry might be warranted were a judge to respond to ARL PAC's questionnaire. No judge re-

---

9. The constitutional component of ripeness often overlaps with the injury-in-fact prong of Article III standing. *See Thomas v. Anchorage Equal Rights Comm'n,* 220 F.3d 1134, 1138 (9th Cir.2000) (en banc) (referring to ripeness as "standing on a timeline"); *see* also *id.* at 1138–39 ("The constitutional component of the ripeness inquiry is often treated under the rubric of standing and, in many cases, ripeness coincides squarely with standing's injury in fact prong.").

quested—and the Commission therefore did not issue—a formal advisory opinion on the propriety of responding to the questionnaire. Executive Director Greenstein's letter, which did not threaten investigation, at most constituted informal guidance and, therefore, under the Commission's own Rule of Procedure 19(d), had no legal effect.

Even if the Commission had initiated an inquiry against a judge who responded to ARL PAC's questionnaire and then recommended sanctions,[10] we would still lack any reason to expect the Alaska Supreme Court to adopt and act upon a recommendation that ran afoul of the First Amendment. Our only insight into the Alaska Supreme Court's likely construction of any of the challenged clauses is the commentary to Canon 5A(3)(d), which discusses a Seventh Circuit case that struck down, on First Amendment grounds, an Illinois canon that is similar but not identical to Canon 5A(3)(d). *See Buckley v. Ill. Judicial Inquiry Bd.*, 997 F.2d 224 (7th Cir.1993). The commentary to Canon 5A(3)(d) concludes that "[t]he [Alaska] Code should be interpreted in a manner that does not infringe First Amendment rights," indicating a strong likelihood that the Alaska Supreme Court would construe the canon to avoid the constitutional concerns addressed in *Buckley* and *White*.

The fact that Alaska's high court has not yet had an opportunity to construe the canons at issue here or to apply them to the speech ARL PAC and Miller hope to solicit further militates in favor of declining jurisdiction. *See Renne v. Geary*, 501 U.S. 312, 323, 111 S.Ct. 2331, 115 L.Ed.2d 288 (1991) (explaining that "[p]ostponing consideration of the [constitutional] questions presented, until a more concrete con-

troversy aries, also has the advantage of permitting the state courts further opportunity to construe [the challenged law], and perhaps in the process to materially alter the question to be decided" (internal quotation marks omitted)). Because only the Alaska Supreme Court has authority to impose disciplinary measures for violations of the Code, *see* Alaska Stat. §§ 22.30.011(d)(2), 22.30.070, it alone has the ultimate authority to construe and apply the provisions at issue here. On this record, an open question exists whether that court would act on a hypothetical recommendation by the Commission to discipline a judge who responded to the questionnaire, let alone whether it would do so on the basis of the specific provisions that ARL PAC and Miller challenge. Declining jurisdiction not only gives the Alaska Supreme Court the first opportunity to construe the canons in the context of judicial campaign speech, should the appropriate circumstances arise, but to do so in a manner that comports with the United States Supreme Court's decision in *White*. *See Christian Coal. of Alabama v. Cole*, 355 F.3d 1288, 1291 n. 1 (11th Cir.2004) (affirming district court's dismissal for lack of jurisdiction in a similar challenge and noting that the Alabama Supreme Court should have the first opportunity to construe its code of judicial conduct in the aftermath of *White* ).

Without a clearer showing that a judge would reasonably risk discipline by responding to the questionnaire, this record is therefore unfit to review Plaintiffs' First Amendment claims. *See Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 304, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979) (concluding, on prudential ripeness grounds, that the district court should not

---

10. As noted, upon the Commission's recommendation the Alaska Supreme Court may reprimand, suspend, or publicly or privately censure a judge; additional measures include removing or retiring the judge from office. Alaska Stat. § 22.30.011(d)(2).

have exercised jurisdiction when it was "impossible to know" whether the State would apply the challenged statutory provision in the manner plaintiffs alleged would implicate constitutional concerns and refusing to adjudicate the constitutional claim based solely on a "hypothesi[s] that such an event will come to pass"); *cf. Duke Power Co. v. Carolina Envt'l Study Group, Inc.*, 438 U.S. 59, 81–82, 98 S.Ct. 2620, 57 L.Ed.2d 595 (1978) (concluding that "[t]he prudential considerations embodied in the ripeness doctrine" weighed in favor of "prompt [federal court] resolution of the claims presented" when delaying adjudication would put the court in " 'no better position later than we are now' to decide this question" (quoting *Blanchette v. Conn. Gen. Ins. Co.*, 419 U.S. 102, 143–45, 95 S.Ct. 335, 42 L.Ed.2d 320 (1974))).

## B.

■ Just as ARL PAC and Miller's failure to demonstrate a likelihood of enforcement of the challenged canons against the judicial speech they would like to solicit renders their suit presently unfit for review, it also weighs against a conclusion that withholding federal jurisdiction would impose hardship. In First Amendment contexts, the Supreme Court has recognized that the harm suffered by a party who restricts allegedly protected speech in order to avoid civil sanction or criminal penalty may warrant preenforcement review in some cases. *See, e.g., Virginia v. Am. Booksellers Ass'n*, 484 U.S. 383, 393, 108 S.Ct. 636, 98 L.Ed.2d 782 (1988) (concluding that a preenforcement challenge was justiciable when plaintiffs restricted their speech based on "an actual and well-founded fear that the law will be enforced against them"). A court may adopt this somewhat relaxed approach to justiciability, however, only upon a showing that the plaintiff "is immediately in danger of sustaining[ ] a direct injury as a result of [an executive or legislative] action." *Laird v. Tatum*, 408 U.S. 1, 12–13, 92 S.Ct. 2318, 33 L.Ed.2d 154 (1972). There is no such showing here.

■ In *San Diego Gun Rights Committee*, we concluded that the plaintiffs would not suffer hardship if we declined jurisdiction over their preenforcement challenge because they had not shown a credible threat of enforcement so as to justify judicial review. *See* 98 F.3d at 1132 (explaining that when "none of the plaintiffs have been charged under the [challenged] Act with any criminal violation" and did not "face a credible threat of prosecution," they could not demonstrate hardship sufficient to warrant jurisdiction). ARL PAC and Miller's claim of hardship is even weaker than that in *San Diego Gun Rights Committee*. Not only is there a lack of any credible threat of enforcement, but neither plaintiff is potentially subject to enforcement of the Code. Even with a more convincing showing that a *judge* reasonably risked discipline by responding to the questionnaire, "[t]he self-censorship door to standing does not open for every plaintiff. The potential plaintiff must have an 'actual or well-founded fear that the law will be enforced *against him or her.*' " *Getman*, 328 F.3d at 1095 (quoting *Am. Booksellers*, 484 U.S. at 393, 108 S.Ct. 636) (emphasis added). ARL PAC's decision not to circulate a 2004 questionnaire at most can be chalked up to futility rather than First Amendment chill. Because the organization would not itself have risked civil sanction or criminal penalty, it has not "suffered the constitutionally recognized injury of self-censorship." *Getman*, 328 F.3d at 1095; *cf. Am. Booksellers*, 484 U.S. at 392, 108 S.Ct. 636 (finding that plaintiffs suffered self-censorship when the challenged statute was "aimed directly at plaintiffs"); *Canatella v. California*, 304

F.3d 843, 855 (9th Cir.2002) (concluding that plaintiff attorney's challenge to state bar statutes was ripe when he faced a credible threat of future disciplinary proceedings so as to pose "ongoing harm to the expressive rights of [other] California attorneys to the extent they refrain from what [plaintiff] believes to be constitutionally protected activity"); *ACLU v. Fla. Bar*, 999 F.2d 1486, 1492 (11th Cir.1993) (holding that a judicial candidate suffered the injury of self-censorship when defendant's threatened enforcement of the challenged regulations "placed [plaintiff] in the position of having to refrain from potentially protected political speech in order to avoid possible disciplinary action").

Nor will delaying adjudication prejudice ARL PAC and Miller's ability to vindicate their constitutional claims later, with a better factual record. *See San Diego Gun Rights Comm.*, 98 F.3d at 1133 (concluding that dismissal would not create undue hardship because "Plaintiffs will have the opportunity to raise their constitutional objections ... if and when the government initiates a criminal prosecution against them under the [challenged] statute").

### IV.

Our decision that the district court should have declined jurisdiction renders moot ARL PAC and Miller's appeal from the district court's order denying their motion for attorneys' fees and costs against the Commission: because they are no longer the prevailing parties they are not entitled to fees under 42 U.S.C. § 1988. Our jurisdictional holding also renders moot their motion to dismiss the portion of their appeal from the district court's judgment denying their challenge to Canon 3E(1).

The only remaining matter is ARL PAC and Miller's appeal from the district court's order granting attorneys' fees and

costs to Van Goor. As an initial matter, we note that a court may award attorneys' fees and costs even after dismissing for lack of jurisdiction. *See* 28 U.S.C. § 1919; *Gator.com Corp. v. L.L. Bean Inc.*, 398 F.3d 1125, 1139 (9th Cir.2005).

■ Section 1988 provides that "[i]n any action or proceeding to enforce a provision of [§ 1983], ... the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee." A prevailing defendant may recover attorneys' fees when a § 1983 plaintiff's claims are "groundless, without foundation, frivolous, or unreasonable." *Karam v. City of Burbank*, 352 F.3d 1188, 1195 (9th Cir.2003) (internal quotation marks omitted). "The terms 'frivolous', 'unreasonable' and 'without foundation' as used in this context do not have appreciably different meanings." *Thomas v. Bible*, 983 F.2d 152, 154 n. 2 (9th Cir.1993).

■ The district court did not abuse its discretion by awarding Van Goor attorneys' fees and costs. Because ARL PAC never distributed its questionnaire to any attorney-applicants, Van Goor never had an opportunity even to consider enforcing the challenged canons, by way of his authority to enforce Alaska Rule of Professional Conduct 8.2(b). The "result" of the claims against Van Goor were therefore both "obvious ... [and] wholly without merit," *Karam*, 352 F.3d at 1195 (internal quotation marks and alteration omitted), entitling Van Goor to fees. *See also Price v. Hawaii*, 939 F.2d 702, 709 (9th Cir.1991) (affirming a grant of attorneys' fees to the prevailing defendant under § 1988 when the complaint "patently failed to state a claim" and lacked any factual basis).

### V.

ARL PAC and Miller's challenges to Canons 3E(1) and 5A(3)(d)(i) and (ii) are

not ripe for federal review. The factual record does not show that even one judge who was subject to the challenged canons' enforcement in 2004 had a clear intention to violate them, that the Commission plans to enforce these canons, or that the Alaska Supreme Court would interpret them in a way that would restrict the speech ARL PAC and Miller hope to solicit. Nor will delaying adjudication hinder ARL PAC and Miller's ability to bring their challenges later with a more fully developed factual record. The next general election in which any current judge will stand for retention will take place in November 2008, leaving Plaintiffs plenty of time to develop a stronger record and then to seek review in either state or federal court, sufficiently in advance of the election. Moreover, because neither ARL PAC nor Miller are themselves subject to the challenged canons, they face no risk of self-censorship.

We therefore vacate the district court's order granting summary judgment and the judgment. In No. 05–35902, we remand with instructions to dismiss the Plaintiffs' action. In No. 05–36027, we affirm the district court's order granting attorneys' fees and costs to Van Goor, deny Plaintiffs' challenge to the district court's order regarding the constitutionality of Canon 3E(1), and deny as moot Plaintiffs' motion to dismiss that portion of their appeal.

**VACATED and REMANDED IN PART; AFFIRMED IN PART.**