**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

RANDOLPH WOLFSON,
          *Plaintiff-Appellant,*

v.

J. WILLIAM BRAMMER, JR.; JOHN C.
GEMMILL; ANGELA H. SIFUENTES;
ROBERT M. BRUTINEL, Judge;
SYLVIA PATINO-BRANFON; HARRIETT
CHAVEZ; SHELIA S. POLK; LOUIS
FRANK DOMINGUEZ; SHERRY L.
GEISLER; CATHERINE M. STEWART;
MARION WEINZWEIG; J. CONRAD
BARAN; DAISY R. FLORES; JEFF
MESSING; JOHN PRESSLEY TODD;
WILLIAM W. HORSLEY; LAURA
BELLAU; PAMELA M. KATZENBERG;
TIMOTHY GOODING; KAREN
OSBORNE; ROBERT B. VAN WYCK,
          *Defendants-Appellees.*

No. 09-15298

D.C. No.
3:08-cv-08064-FJM

OPINION

Appeal from the United States District Court
for the District of Arizona
Frederick J. Martone, District Judge, Presiding

Argued and Submitted
March 11, 2010—San Francisco, California

Filed August 13, 2010

Before: J. Clifford Wallace, Susan P. Graber, and
M. Margaret McKeown, Circuit Judges.

Opinion by Judge Wallace;
Partial Concurrence and Partial Dissent by Judge Graber

11605

**COUNSEL**

James Bopp, Jr., Esq., Bopp, Coleson & Bostrom, Terra Haute, Indiana, for plaintiff-appellant Randolph Wolfson.

Kimberly A. Demarchi, Esq., Lewis and Roca LLP, Phoenix, Arizona, for defendant-appellee Robert Van Wyck, Chief Bar Counsel of the State Bar of Arizona.

Charles A. Grube, Esq., Assistant Attorney General, Office of the Arizona Attorney General, Phoenix, Arizona, for defendants-appellees J. William Brammer, Jr., John C. Gemmill, Angela H. Sifuentes, Robert M. Brutinel, Sylvia Patino-Branfon, Harriett Chavez, Shelia S. Polk, Louis Frank Dominguez, J. Conrad Baran, Daisy R. Flores, Jeff Messing, John Pressley Todd, William W. Horsley, Laura Bellau, Pamela M. Katzenberg, Timothy Gooding, and Karen Osborne.

---

**OPINION**

WALLACE, Senior Circuit Judge:

While a candidate for judicial office in Arizona, appellant Randolph Wolfson initiated this action against the members of the Arizona Commission on Judicial Conduct, the members of the Arizona Supreme Court Disciplinary Commission, and Arizona Chief Bar Counsel Robert Van Wyck (collectively, defendants) challenging several canons of the Arizona Code of Judicial Conduct (Code) that restricted his political speech and campaign-related activities while a candidate for judicial office. While this action was pending, Wolfson lost the election. Because the Code applies only to judges and candidates for judicial office, and because Wolfson did not intend to seek judicial office in the next election, the district court dismissed the action as moot.

Wolfson now appeals. We have jurisdiction pursuant to 28 U.S.C. § 1291. We reverse and remand.

**I.**

Wolfson is a practicing attorney and member of the Arizona Bar. He has twice unsuccessfully sought election to judicial office in the State of Arizona. In 2006, Wolfson ran for the office of Kingman Precinct Justice of the Peace in Mohave County, Arizona. During his campaign, Wolfson filed an action alleging that several canons of the Code imposed unconstitutional restrictions on his political speech and campaign activities. *Wolfson v. Brammer* (*Wolfson I*), No. CV-06-2357 (Judge Stephen M. McNamee). Wolfson alleged that he wanted to engage in certain campaign-related activities and political speech but refrained from doing so, believing the activities to be prohibited by the challenged canons of the Code. In November 2006, Wolfson lost the election. It is Wolfson's belief that the restrictions on his campaign imposed by the Code contributed to his loss.

Shortly after his defeat, Wolfson decided that he would again seek an elected judicial office in the 2008 elections. In early 2007, Wolfson announced his candidacy for the office of Superior Court Judge, Division V, Mohave County, Arizona. At this time, *Wolfson I* was still pending.

In August 2007, however, the district court dismissed *Wolfson I* on the basis of prudential ripeness. The district court concluded that Wolfson should seek an advisory opinion from Arizona's Judicial Ethics Advisory Committee (Ethics Committee), a body empowered by the Arizona Supreme Court to render, upon request, advisory opinions to judges and judicial candidates. *See Matter of Walker*, 736 P.2d 790, 795 (Ariz. 1987); Ariz. Sup. Ct. Rule 82(b)(1). An advisory opinion would clarify, to some degree, whether the campaign activities and political speech in which Wolfson wished to engage were prohibited by the Code. Following the district court's

dismissal, Wolfson submitted a request to the Ethics Committee for a formal advisory opinion. In April 2008, the Ethics Committee responded to Wolfson's request by issuing Advisory Opinion 08-01.

With the advisory opinion in hand, Wolfson filed the present action in May 2008. *Wolfson v. Brammer* (*Wolfson II*), No. CV-08-8064 (Judge Frederick J. Martone). The allegations in the present action are similar to those in *Wolfson I*: Wolfson alleges that he wanted to engage in certain campaign-related activities and political speech but refrained, believing that the contemplated activities were prohibited by the Code.

First, Wolfson asserts that he wanted to solicit campaign contributions personally, at live appearances and speaking engagements, by making phone calls, and by signing his name to letters seeking donations. Wolfson argues that such solicitations are prohibited by canons 5A(1)(c) and 5B(2) (revised rules 4.1(A)(4) and 4.1(A)(6), respectively) (collectively, the solicitation restrictions).

Second, Wolfson alleges that he wanted to endorse other candidates for office and to support their election campaigns. Wolfson asserts that canons 5A(1)(b) (revised rule 4.1(A)(2) & (3)) (the endorsement clause) and 5A(1)(d) (revised rule 4.1(A)(5)) (the campaigning prohibition) forbid a candidate for judicial office from endorsing other candidates or supporting their campaigns.

Third, Wolfson alleges that he wanted to answer questions from voters and to make presentations regarding his views on disputed legal and political issues, but was prohibited from doing so by canon 5B(1)(d)(i) (revised rule 4.1(A)(9)) (the pledges and promises clause) and canon 3E(1)(e) (revised rule 2.11(A)(5)) (the commits clause).

In November 2008, Wolfson lost the election. After Wolfson's defeat, the district court ordered him to submit a supple-

mental brief indicating whether he intended to seek judicial office in the next election. Wolfson replied that he did not. The district court concluded that the action was moot. The district court further held that the action did not meet the exception to mootness for actions "capable of repetition yet evading review."

After the district court's dismissal, the Arizona Supreme Court adopted a new Code of Judicial Conduct. The revised Code, effective September 1, 2009, renumbers and recodifies the canons at issue, but does not alter the substance of the challenged canons, with one exception. In the new Code, the text of the so-called "commits clause" has been substantially revised. The complaint alleged that the commits clause (in addition to the pledges and promises clause) impermissibly restricted the speech of judicial candidates regarding disputed legal and political issues. Wolfson concedes that his claims regarding the commits clause have been rendered moot by the revision of that clause, and so those claims are no longer before us.

## II.

We review the district court's dismissal on the grounds of mootness de novo, as a dismissal for lack of subject matter jurisdiction. *Rosemere Neighborhood Ass'n v. United States EPA*, 581 F.3d 1169, 1172 (9th Cir. 2009). We review factual determinations underlying the district court's decision for clear error. *Am.-Arab Anti-Discrimination Comm. v. Thornburgh*, 970 F.2d 501, 506 (9th Cir. 1991). In this appeal, defendants invoke the additional jurisdictional defenses of standing and ripeness. Standing and ripeness, like the doctrine of mootness, predominantly present questions of law that we review de novo. *San Diego County Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1124 (9th Cir. 1996).

[1] Article III of the United States Constitution limits federal court jurisdiction to "actual, ongoing cases or controver-

sies." *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990); *see also Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997). We lack jurisdiction "to decide moot questions or abstract propositions," because "moot questions require no answer." *North Carolina v. Rice*, 404 U.S. 244, 246 (1971) (per curiam) (internal quotation marks, citations and alterations omitted). A case or controversy must exist at all stages of review, not just at the time the action is filed. *Alvarez v. Smith*, 130 S. Ct. 576, 580 (2009). A case may become moot after it is filed, "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Porter v. Jones*, 319 F.3d 483, 489 (9th Cir. 2003), *quoting Clark v. City of Lakewood*, 259 F.3d 996, 1011 (9th Cir. 2001).

**[2]** An exception to the mootness doctrine exists, however, where an action is "capable of repetition, yet evading review." *So. Pac. Terminal Co. v. Interstate Commerce Comm'n*, 219 U.S. 498, 515 (1911). This exception permits actions "for prospective relief to go forward despite abatement of the underlying injury only in exceptional situations . . . where the following two circumstances [are] simultaneously present: (1) the challenged action [is] in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again." *Lewis*, 494 U.S. at 481 (internal quotation marks and citation omitted).

**[3]** Wolfson's action easily satisfies the first requirement, as a controversy evading review. "Election cases often fall within this exception, because the inherently brief duration of an election is almost invariably too short to enable full litigation on the merits." *Porter*, 319 F.3d at 490; *see also Joyner v. Mofford*, 706 F.2d 1523, 1527 (9th Cir. 1983) (election cases are likely to escape review because appellate review often cannot be completed during the brief duration of an election). Indeed, this is precisely the situation Wolfson has encountered: being unable to complete the litigation of his

claims within the brief time frame of his campaign for judicial office.

To satisfy the second requirement, that the action is capable of repetition, Wolfson must establish a reasonable expectation that he will be subjected to the same action or injury again. Wolfson is not presently bound to obey the Code, and will not be subject to the Code unless he again becomes a candidate for judicial office. Wolfson is not now, and he has never been, subject to any enforcement action or threat of enforcement action related to his campaign conduct. Wolfson argues, however, that this action is capable of repetition because he intends to seek elected judicial office in the future. In the alternative, Wolfson asserts that his intentions toward future candidacy, or lack thereof, are irrelevant to evaluating the application of the "capable of repetition, yet evading review" exception to mootness.

The district court found that Wolfson did not intend to seek judicial office in 2010 or in any other future election. This finding is clearly erroneous. While Wolfson concedes that he does not intend to seek office in the 2010 election, he has declared an intent to seek judicial office at some point in the future. The district court's finding relied on a supplemental brief filed by Wolfson, but that brief does not support such a finding. After Wolfson's defeat, the district court ordered him to submit a supplemental brief answering the following question: "Will you be a candidate for judicial office in the next election?" In his supplemental brief, Wolfson replied: "Plaintiff does not currently intend to be a candidate for judicial office in 2010." On the basis of Wolfson's supplemental brief, the district court concluded that Wolfson's action was not "capable of repetition," because he "affirmatively state[d] that he does not intend to be a candidate in the next election" and failed to "express an intention to be a candidate in any election in the near future."

[4] But Wolfson was not asked about his future intent. Wolfson's response was appropriate for the question posed.

The district court asked Wolfson if he would seek office "in the *next* election," and Wolfson replied that he currently did not intend to be a candidate for judicial office in 2010. The district court asked a narrow question: whether Wolfson intended to seek office in the "next" election. Wolfson responded that he did not. The district court did not order Wolfson to declare his intentions more generally. We do not fault Wolfson for answering the specific question posed in the district court's order, and we do not fault Wolfson for failing to volunteer information that the court had not requested.

**[5]** There is more than sufficient evidence to support a finding that Wolfson intends to seek judicial office in the future. Wolfson's complaint expresses an intention to seek judicial office in the future, and a desire to engage in prohibited conduct "both in the 2008 judicial election and in future judicial elections." Furthermore, eliminating any doubts regarding the record, Wolfson has represented in the present appeal that he intends to seek judicial office in a future election. The Court has declined to dismiss election cases as moot where the candidate-plaintiff has subsequently announced an intent to seek office in a future election. *See Davis v. Fed. Election Comm'n*, 128 S. Ct. 2759, 2769-70 (2008) (challenge to self-financing provisions of federal campaign finance law not moot where the plaintiff-candidate subsequently announced his intention to self-finance another campaign for office); *Chandler v. Miller*, 520 U.S. 305, 313 n.2 (1997) (citing 28 U.S.C. § 1653 for the proposition that defective jurisdictional allegations are curable at trial or on appeal, and holding that a challenge to certain provisions of Georgia election law was not moot, even though petitioner-candidate did not announce in the trial court his plans to run again, where he later "represented, as an officer of this Court, that he plans to run again"); *see also Fed. Election Comm'n v. Wis. Right To Life, Inc.*, 551 U.S. 449, 462-64 (2007) (challenge to advertising restrictions in federal campaign finance law not mooted by conclusion of election where plaintiff-organization expressed its intention to run similar ads in future elections);

*Int'l Org. of Masters, Mates & Pilots v. Brown*, 498 U.S. 466, 473 (1991) (holding an election case not moot because "[r]espondent has run for office before and may well do so again"). Wolfson has declared his intention to seek elected judicial office in the future and declared his desire, in connection with any future campaign, to engage in the same activities that are the subject of the complaint in this action. These expressions of intent are sufficient to establish a "reasonable expectation" that this action is "capable of repetition."

As an alternative, Wolfson asserts that his intentions regarding future candidacy are irrelevant to our application of the "capable of repetition, yet evading review" exception to mootness. To support this argument, Wolfson relies on our decision in *Schaefer v. Townsend*, 215 F.3d 1031 (9th Cir. 2000). There, plaintiff Schaefer was a resident of Nevada who sought to become a candidate in a special election to fill a vacant California seat in the House of Representatives. Schaefer challenged a residency requirement in California election law that prohibited his candidacy. Schaefer *refused* to disclose whether he intended to run for office in California in the future, arguing that his future political aspirations were irrelevant to evaluating the mootness exception. *Id.* at 1033. We decided that the capable-of-repetition exception should not be construed narrowly, observing that several cases had "proceeded to the merits without examining the future political intentions of the challengers." *Id.* at 1033, *citing Dunn v. Blumstein*, 405 U.S. 330, 333, n.2 (1972); *Joyner*, 706 F.2d at 1527. We did not hold "that *only* when a candidate plans to seek reelection is the case *not* moot," and concluded that Schaefer's action could proceed. *Id.* (second emphasis added), *quoting Thorsted v. Munro*, 75 F.3d 454, 456 (9th Cir. 1996).

Although the parties have vigorously disputed the viability, meaning, and import of *Schaefer*, we need not weigh in on the matter. The plaintiff in *Schaefer* refused to declare his future electoral intentions. Wolfson, in contrast, has affirmatively stated that he intends to become a candidate again. We have

already concluded that Wolfson has met the ripeness requirement by indicating his intent to run for judicial office in the future. *See, e.g.*, *Davis*, 128 S. Ct. at 2769-70; *Chandler*, 520 U.S. at 313 n.2. We need not go further at this time. We therefore leave for another case the significance of *Schaefer* in this Circuit.

## III.

Additional objections have been raised as to our jurisdiction. Defendants ask us to dismiss this case for the alternative reasons that Wolfson lacks standing and that Wolfson's claims are not ripe. These contentions are properly considered in this appeal. *See Attorneys Trust v. Videotape Computer Prods., Inc.*, 93 F.3d 593, 595 (9th Cir. 1996) (jurisdictional challenges may be raised at any time).

## A.

**[6]** "[S]tanding is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *see also Hein v. Freedom From Religion Found., Inc.*, 551 U.S. 587, 597-98 (2007). At an "irreducible constitutional minimum," standing requires the party asserting the existence of federal court jurisdiction to establish three elements: (1) an injury in fact that is (a) concrete and particularized and (b) actual or imminent; (2) causation; and (3) a likelihood that a favorable decision will redress the injury. *Lujan*, 504 U.S. at 560-61. In addition to these requirements, the doctrine of prudential standing requires us to consider, among other things, whether the alleged injury is more than a " 'mere generalized grievance,' whether the plaintiff is asserting her own rights or the rights of third parties, and whether the claim 'falls within the zone of interests to be protected or regulated by the constitutional guarantee in question.' " *Alaska Right to Life PAC v. Feldman*, 504 F.3d 840, 848-49 (9th Cir. 2007), *quoting Johnson v. Stuart*, 702 F.2d 193, 196 (9th Cir. 1983).

Defendants argue that the third element of constitutional standing, redressability, is absent here. They argue that Wolfson has failed to state a claim for relief from them, because they have no legal authority to change the Code. Instead, that authority is reserved to the Arizona Supreme Court. Defendants contend that Wolfson, if successful in this action, can obtain no effective redress because he cannot obtain a revision of the Code.

**[7]** Wolfson need not obtain a Code revision, however, in order to obtain a measure of relief. A plaintiff meets the redressability requirement if it is likely, although not certain, that his injury can be redressed by a favorable decision. *See Bonnichsen v. United States*, 367 F.3d 864, 873 (9th Cir. 2004); *Beno v. Shalala*, 30 F.3d 1057, 1065 (9th Cir. 1994) (plaintiff "must show only that a favorable decision is *likely* to redress his injury, not that a favorable decision *will inevitably* redress his injury"). If a plaintiff is "an object of the [challenged action] . . . there is ordinarily little question that the action or inaction has caused him injury, and that a judgment preventing or requiring the action will redress it." *Lujan*, 504 U.S. at 561-62.

**[8]** These defendants have the power to discipline Wolfson and, if they are enjoined from enforcing the challenged provisions, Wolfson will have obtained redress in the form of freedom to engage in certain activities without fear of punishment. The Arizona Commission on Judicial Conduct has disciplinary jurisdiction over the actions of judges, including their actions as candidates. *See generally* Rules of the Commission on Judicial Conduct (explaining disciplinary authority of the Commission on Judicial Conduct); *see also* Ariz. Code Jud. Conduct, canon 5C (a successful candidate is subject to judicial discipline for campaign conduct); *id.* (2009), rule 4.1 cmt. 2 (same). The Arizona Supreme Court Disciplinary Commission has authority to impose various sanctions on members of the Arizona Bar, including censure, reprimand, probation, and restitution. Ariz. Sup. Ct. Rule

49(c)(2), 60; *see also Republican Party of Minn. v. White*, 536 U.S. 765, 770 n.3 (2002) (naming officers of the Minnesota Board on Judicial Standards and the Lawyers Board as defendants in an action challenging the constitutionality of a canon restricting behavior of candidates for judicial office). The Arizona Chief Bar Counsel is charged with overseeing and directing the prosecution of discipline cases involving members of the bar. Ariz. Sup. Ct. Rule 51. Enjoining the defendants from enforcing the challenged canons will redress Wolfson's injury. Without a possibility of the challenged canons being enforced, those canons will no longer have a chilling effect on speech. Wolfson will thus be able to engage in the political speech and campaign activities he desires. It is true that Wolfson cannot obtain revision of the Code from these defendants, but Wolfson may nevertheless obtain a form of effective redress in this action.

### B.

**[9]** Defendants also assert that Wolfson's claims are not ripe. "The ripeness doctrine is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." *Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003) (internal quotation marks omitted). The ripeness doctrine "is peculiarly a question of timing," *Reg'l Rail Reorg. Act Cases*, 419 U.S. 102, 140 (1974), designed "to separate matters that are premature for review because the injury is speculative and may never occur from those cases that are appropriate for federal court action," *Portman v. County of Santa Clara*, 995 F.2d 898, 902 (9th Cir. 1993) (internal quotation marks omitted). "[T]hrough avoidance of premature adjudication," the ripeness doctrine prevents courts from becoming entangled in "abstract disagreements." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977).

Wolfson is not presently bound to obey the Code and will only be required to do so if he again becomes a candidate for

judicial office. Wolfson is neither now, nor has he ever been, subject to any enforcement action related to these canons. Instead, Wolfson alleges that he wants to engage in three kinds of expressive activity that he believes the Code prohibits: (1) personally soliciting contributions, which is prohibited by the solicitation restrictions contained in canons 5A(1)(c) and 5B(2) (revised rules 4.1(A)(4) & 4.1(A)(6)); (2) endorsing other candidates for office and supporting their campaigns, actions which are prohibited by the endorsement clause and the campaigning prohibition contained in canons 5A(1)(b) & (d) (revised rules 4.1(A)(2) & (3), 4.1(A)(5)); and (3) answering questions from voters and making public speeches regarding disputed legal and political issues, which Wolfson believes is prohibited by the pledges and promises clause, canon 5B(1)(d)(i) (revised rule 4.1(A)(9)). Wolfson alleges that he has suffered the injury of self-censorship, and that he will be required to self-censor in any future campaign for elected judicial office. As the pledges and promises clause raises distinct issues from the solicitation, endorsement, and campaigning clauses, we will address the pledges and promises clause separately.

## 1.

We first turn to whether Wolfson's claims regarding the solicitation, endorsement, and campaigning prohibitions (canons 5A(1)(b), 5A(1)(c), 5A(1)(d), and 5B(2)) are ripe.

### a.

Ripeness has both constitutional and prudential components. *Portman*, 995 F.2d at 902. The constitutional component of ripeness overlaps with the "injury in fact" analysis for Article III standing. *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138-39 (9th Cir. 2000) (en banc); *see also United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980). Whether framed as an issue of standing or ripeness, the inquiry is largely the same: whether the issues

presented are "definite and concrete, not hypothetical or abstract." *Thomas*, 220 F.3d at 1139 (internal quotation marks omitted).

**[10]** Wolfson is not currently subject to an enforcement action and therefore raises a pre-enforcement challenge to the canons. Neither the "mere existence of a proscriptive statute" nor a "generalized threat of prosecution" satisfies the "case or controversy" requirement. *Id.*, *citing San Diego County*, 98 F.3d at 1126-27; *see also Stoianoff v. Montana*, 695 F.2d 1214, 1223 (9th Cir. 1983). It is true that "[o]ne does not have to await the consummation of threatened injury to obtain preventive relief." *Reg'l Rail Reorg. Act Cases*, 419 U.S. at 143 (quotation marks and citation omitted); *see also Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979) (a plaintiff need not expose himself to prosecution in order to challenge the constitutionality of a statute "that he claims deters the exercise of his constitutional rights"). However, for a claim to be ripe, the plaintiff must be subject to a "*genuine* threat of *imminent* prosecution." *San Diego County*, 98 F.3d at 1126, *quoting Wash. Mercantile Ass'n v. Williams*, 733 F.2d 687, 688 (9th Cir. 1984). When evaluating whether a claimed threat of prosecution is genuine, we consider: (1) whether the plaintiff has articulated a concrete plan to violate the law in question; (2) whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings; and (3) the history of past prosecution or enforcement under the challenged statute. *Id.* at 1126-28.

Although the mere existence of a statute is insufficient to create a ripe controversy, we have applied the requirements of ripeness and standing less stringently in the context of First Amendment claims. *Cal. Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088, 1094 (9th Cir. 2003) ("in the First Amendment-protected speech context, the Supreme Court has dispensed with rigid standing requirements"). In particular, we apply the principle that one need not await "consummation of threatened injury" before challenging a statute restrict-

ing speech, to guard the risk that protected conduct will be deterred. *Ariz. Right to Life PAC v. Bayless*, 320 F.3d 1002, 1006 (9th Cir. 2003) (internal quotation marks omitted); *see also LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1154-55 (9th Cir. 2000). To avoid the chilling effect of restrictions on speech, the Court has endorsed "a 'hold your tongue and challenge now' approach rather than requiring litigants to speak first and take their chances with the consequences." *Bayless*, 320 F.3d at 1006 (citations omitted); *see also Bland v. Fessler*, 88 F.3d 729, 736-37 (9th Cir. 1996); *accord Navegar, Inc. v. United States*, 103 F.3d 994, 999 (D.C. Cir. 1997).

**[11]** Looking to the first consideration, whether Wolfson has a concrete plan to violate the law, we conclude that Wolfson has established an intent to violate the law that is more than hypothetical. *Cf. Thomas*, 220 F.3d at 1139. Wolfson has expressed an intention to run for office in the future, and a desire to engage in two kinds of campaign-related conduct that is likely to be prohibited by the Code.

First, Wolfson has expressed a desire to solicit campaign contributions personally, through live appearances, phone calls, and written requests. The solicitation restrictions, canons 5A(1)(c) and 5B(2) (revised rules 4.1(A)(4) & 4.1(A)(6)), state that a judicial candidate shall not "solicit funds for or pay an assessment to a political organization . . ." and that a candidate "should refrain from personally soliciting campaign contributions." Advisory Opinion 08-01 confirmed that Wolfson, while a candidate for judicial office subject to the Code, cannot personally solicit or receive campaign contributions.

Second, Wolfson has expressed a desire to endorse other candidates. The endorsement clause, canon 5A(1)(b) (revised rule 4.1(A)(2) & (3)), states that a judge or judicial candidate shall not "make speeches for a political organization or candidate or publicly endorse a candidate for public office." The campaigning prohibition, canon 5A(1)(d) (revised rule 4.1(A)(5)), states that a judicial candidate shall not "actively

take part in any political campaign other than his or her own election, reelection or retention in office." Several Advisory Opinions have confirmed that Wolfson cannot, while a candidate for judicial office, endorse another candidate or participate in another candidate's campaign. Advisory Opinion 08-01 stated that Wolfson could not endorse other candidates for office while himself a candidate. In Advisory Opinion 96-08, the Ethics Committee said that judges "may not participate in campaigns for or against political candidates, even those who take positions affecting the administration of justice," explaining that "Canon 5A(1) of the Code of Judicial Conduct prohibits judges from publicly endorsing a candidate, making speeches for a political organization or candidate, . . . or actively taking part in any political campaign other than their own." In Advisory Opinion 96-09, the Ethics Committee considered whether a judge could appear in an advertisement endorsing a ballot proposition that he had been involved in drafting. The Ethics Committee concluded that a judge could not endorse a proposition, even one that he or she had assisted in drafting, because "the code does not permit a judge to act as a spokesperson and advocate for others."

[12] Turning to the second consideration guiding the ripeness inquiry, the existence of an enforcement action or threat of the same, we start with the undisputed fact that Wolfson has never been threatened with enforcement proceedings. Wolfson asserts that his claims are nevertheless ripe because he has self-censored to comply with the Code. Self-censorship is a constitutionally recognized injury. *See Virginia v. Am. Booksellers Ass'n*, 484 U.S. 383, 393 (1988) (self-censorship is "a harm that can be realized even without an actual prosecution"). In the context of First Amendment speech, a threat of enforcement may be inherent in the challenged statute, sufficient to meet the constitutional component of the ripeness inquiry. *Bayless*, 320 F.3d at 1006-07; *see also Getman*, 328 F.3d at 1095; *Majors v. Abell*, 317 F.3d 719, 721 (7th Cir. 2003) ("[T]he threat [of prosecution] is latent in the existence of the statute"). Especially where protected speech may be at

stake, a plaintiff need not risk prosecution in order to challenge a statute. *See, e.g.*, *Bayless*, 320 F.3d at 1006; *Bland*, 88 F.3d at 736-37. The Supreme Court has repeatedly pointed out the necessity of allowing pre-enforcement challenges to avoid the chilling of speech. *See, e.g.*, *Am. Booksellers Ass'n*, 484 U.S. at 393; *Dombrowski v. Pfister*, 380 U.S. 479, 486 (1965) (recognizing the "sensitive nature of constitutionally protected expression," in permitting a pre-enforcement action involving the First Amendment).

**[13]** The third inquiry, past prosecution or enforcement, has little weight in our analysis. The Code is relatively new and the record contains little information as to enforcement or interpretation, other than the advice of the Ethics Committee to Wolfson. Nevertheless, this record is sufficient under the circumstances of this case. Wolfson's claims meet the constitutional component of ripeness.

**b.**

To evaluate the prudential component of ripeness, we weigh two considerations: "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Abbott Labs.*, 387 U.S. at 149. We have held that " '[a] claim is fit for decision if the issues raised are primarily legal, do not require further factual development, and the challenged action is final.' " *US West Commc'ns v. MFS Intelenet, Inc.*, 193 F.3d 1112, 1118 (9th Cir. 1999), *quoting Standard Alaska Prod. Co. v. Schaible*, 874 F.2d 624, 627 (9th Cir. 1989). " 'To meet the hardship requirement, a litigant must show that withholding review would result in direct and immediate hardship and would entail more than possible financial loss.' " *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1126 (9th Cir. 2009), *quoting US West Commc'ns*, 193 F.3d at 1118. In our evaluation of a claim of hardship, "[w]e consider whether the regulation requires an immediate and significant change in plaintiffs' conduct of their affairs with

serious penalties attached to noncompliance." *Id.* (internal quotation marks omitted).

**[14]** We hold that Wolfson's claims regarding the solicitation, campaigning, and endorsement clauses satisfy the concerns of prudential ripeness. Wolfson's claim is fit for decision, because it is primarily legal and does not require substantial further factual development. *See US West Commc'ns*, 193 F.3d at 1118; *San Diego County*, 98 F.3d at 1132. We also conclude that Wolfson is subject to a sufficient hardship. Wolfson has alleged a hardship through the constitutionally-recognized injury of self-censorship. Because we relax the requirements of standing and ripeness to avoid the chilling of protected speech, *Getman*, 328 F.3d at 1094, Wolfson need not await prosecution to seek preventative relief. *See Bayless*, 320 F.3d at 1006; *LSO*, 205 F.3d at 1155.

**[15]** Defendants assert that Wolfson's claims should be adjudicated in the future, if and when he is again a candidate for judicial office *and* subject to enforcement proceedings. Defendants ask too much. Wolfson alleges that he has already suffered the constitutionally-recognized injury of self-censorship in two separate election campaigns and that he will again be required to censor his speech in a future campaign. Defendants' approach would effectively relegate Wolfson to self-censorship in a third election: as Wolfson's two electoral bids and two actions demonstrate, it is unlikely that this litigation will be completed in the short time frame of an election. Even further, defendants would have any action by Wolfson deferred until an enforcement proceeding is brought. But an enforcement proceeding is not likely, given Wolfson's statement that he will self-censor to comply with the Code. Wolfson's compliance with his duties under the Code should not bar this action, because the principle that "one should not have to risk prosecution to challenge a statute is especially true in First Amendment cases." *Bland*, 88 F.3d at 736-37; *see also Bayless*, 320 F.3d at 1006; *LSO*, 205 F.3d at 1155. Requiring Wolfson to violate the Code as a precondition to

bringing suit would, furthermore, "turn respect for the law on its head." *Bayless*, 320 F.3d at 1007; *see also Bland*, 88 F.3d at 737 (concluding that a plaintiff 's decision to obey the law was "reasonable and demonstrates a commendable respect for the rule of law"). Wolfson has stated an injury of self-censorship and therefore need not await consummation of the threatened injury to bring his claims. *See*, *e.g., Canatella v. California*, 304 F.3d 843, 855 (9th Cir. 2002) (challenge to state bar rules ripe where alleged harm of potential disciplinary measures damage to the expressive rights of attorneys who refrained from protected activity); *ACLU v. Fla. Bar*, 999 F.2d 1486, 1492-93 (11th Cir. 1993) (challenge to canons of judicial conduct ripe where plaintiff would have to refrain from protected speech to avoid disciplinary action).[1]

Defendants also argue that our decision in *Alaska Right to Life PAC v. Feldman* requires us to decline jurisdiction. 504 F.3d 840. The plaintiff in *Feldman* was a political action committee, Alaska Right to Life, which sought to elicit, through a questionnaire, sitting judges' viewpoints on several issues. *Id.* at 843. Few judges responded to the questionnaire in any way; of the few judges who did, all declined to provide substantive answers, citing the Alaska Code of Judicial Conduct. *Id.* Alaska Right to Life brought an action challenging the

---

[1]Judge Graber would have us dismiss the claims against the Arizona Commission on Judicial Conduct as unripe because the Commission on Judicial Conduct may not exercise authority over Wolfson unless he is actually elected. If elected, however, Wolfson would be required to answer for statements and conduct made while campaigning. Thus, he would be forced to self-censor in a future election even if the Commission on Judicial Conduct were the *only* body with authority to sanction campaign speech that violates ethical rules. Without preventative relief against the Commission on Judicial Conduct, Wolfson would be forced to self-censor while participating in a future election because of the *possibility* that he might win. Preventative relief against the Disciplinary Commission and Chief Bar Counsel is insufficient to redress Wolfson's injury of self-censorship. Whether or not he wins, Wolfson will be required to self-censor in a future election unless preventative relief is also extended to the Commission on Judicial Conduct.

constitutionality of the "pledges and promises" and "commits" canons of Alaska's Code of Judicial Conduct. *Id.* We concluded that the district court should have declined to exercise jurisdiction on prudential ripeness grounds. *Id.* at 849. There was no hardship to the plaintiff because the challenged canons did not apply to it, and by extension, no concrete factual situation framing the controversy. *Id.* at 851. Also weighing against the exercise of jurisdiction, the Alaska Supreme Court had not yet had an opportunity to construe the canons at issue. *Id.* at 850-52. Because Alaska's Code of Judicial Conduct indicated a preference for interpretation "in a manner that does not infringe First Amendment rights," we had no reason to expect that the Alaska Supreme Court would adopt a recommendation "that ran afoul of the First Amendment." *Id.* at 850; *see also Renne v. Geary*, 501 U.S. 312, 323 (1991) (consideration of constitutional questions should be postponed until a concrete controversy arises, allowing state courts the opportunity to construe a challenged law).

[16] *Feldman* does not compel dismissal of Wolfson's action. Wolfson is dissimilar from the *Feldman* plaintiff in several material respects. In *Feldman*, the plaintiff was not subject to the challenged code, was not threatened with any enforcement action, and had not suffered the injury of self-censorship. *Id.* In contrast, Wolfson's speech was constrained by the Code and he self-censored in order to comply with the Code. Unlike the *Feldman* plaintiff, Wolfson's action seeks principally to redress restrictions on his own speech, as a former candidate for judicial office and as a likely future candidate. *See, e.g.*, *Porter*, 319 F.3d at 490-91. In further contrast to the *Feldman* plaintiff, Wolfson has already sought an advisory opinion regarding the challenged canons. Wolfson's claims relating to the solicitation, campaigning and endorsement canons of the Code are ripe.

### 2.

We turn to Wolfson's claims regarding the pledges and promises clause, canon 5B(1)(d)(i) (revised rule 4.1(A)(9)).

Wolfson alleges that, during his campaigns for judicial office, he wanted to give talks on certain disputed legal and political issues, and answer questions from voters regarding the same. For example, Wolfson alleges that he wanted to give talks regarding same-sex marriage and family values during the 2006 campaign. An initiative on Arizona's November 2006 ballot, Proposition 107, pertained to same-sex marriage. Believing that he was prohibited from discussing disputed legal and political issues while a candidate for judicial office, Wolfson censored his presentation to omit any discussion of Proposition 107.

**a.**

Although we apply the requirements of ripeness less stringently in the First Amendment context, a plaintiff must nevertheless establish that he or she possesses an "actual and well-founded fear that the law will be enforced against him or her." *Getman*, 328 F.3d at 1095 (internal quotation marks omitted). We have held that a plaintiff must have a *plausible* and *reasonable* fear of prosecution. *See id.*; *LSO*, 205 F.3d at 1154-55. Bare allegations that a plaintiff's speech has been chilled by the challenged statute are insufficient to establish a reasonable fear of prosecution. *Getman*, 328 F.3d at 1095 ("The self-censorship door to standing does not open for every plaintiff"). Instead, a well-founded fear of prosecution "will only inure if the plaintiff's intended speech arguably falls within the statute's reach." *Id.*, *citing Am. Booksellers Ass'n*, 484 U.S. at 392; *see also Majors*, 317 F.3d at 721 (a statute that "clearly fails to cover [plaintiff's] conduct" does not give rise to a latent threat of enforcement or reasonable fear of prosecution).

In evaluating the ripeness of a claim, we typically consider whether the plaintiff intends to violate the law, whether enforcement proceedings have been threatened, and whether the enforcement history of the challenged statute corroborates a genuine threat. *See generally San Diego County*, 98 F.3d at

1126-29. Wolfson's claim regarding the pledges and promises clause displays none of these features. Wolfson admits that he has no "concrete plan" to violate the pledges and promises clause. *See id.* at 1127. In fact, Wolfson's complaint declares that he "does not wish to pledge or promise certain results in particular cases or classes of cases." Wolfson has never been subject to or threatened with an enforcement action, and does not submit any history of enforcement under the pledges and promises clause that would support his claimed fear of prosecution. *See id.* at 1127-29. Instead, Wolfson fears that the pledges and promises clause may be construed to prohibit judicial candidates from announcing their views on disputed legal and political issues.

**[17]** Wolfson can have no well-founded fear that he will be prosecuted for violating the pledges and promises clause because that clause does not unambiguously reach his proposed conduct. Arizona's pledges and promises clause provides that a judge or judicial candidate shall not "with respect to cases, controversies, or issues that are likely to come before the court, make pledges, promises or commitments that are inconsistent with the impartial performance of the adjudicative duties of the office." The pledges and promises clause prohibits *committing* oneself or *making promises*. The pledges and promises clause does not unambiguously prohibit the expression of one's views on issues that may come before the court. The Ethics Committee has explained that "a judicial candidate may publicly discuss his or her personal opinions on any subject under . . . [the pledges and promises clause] because a candidate may express views on any disputed issue." Advisory Opinion 08-01.

**[18]** Taking all of the above together, we conclude that Wolfson does not face a "*genuine* threat of *imminent* prosecution" with respect to the pledges and promises clause. *Cf. San Diego County*, 98 F.3d at 1126. Wolfson has no intent to violate the pledges and promises clause, and fails to demonstrate that the clause reaches any of his intended speech. *See Get-*

*man*, 328 F.3d at 1095. In effect, Wolfson's fear is that the pledges and promises clause might be construed in a particular manner. This falls short of "a credible threat" that the pledges and promises clause will be enforced against him. *Bayless*, 320 F.3d at 1006, *quoting LSO, Ltd.*, 205 F.3d at 1154-55. Wolfson's fear concerns a *possibility*, and is insufficient to satisfy the constitutional component of ripeness. *See Portman*, 995 F.2d at 902 (speculative injuries are not ripe for review); *Darring v. Kincheloe*, 783 F.2d 874, 877 (9th Cir. 1986) ("imaginary or speculative" fears of prosecution are not ripe)*, quoting Younger v. Harris*, 401 U.S. 37, 42 (1971). We hold that Wolfson's claims regarding the pledges and promises clause do not satisfy the constitutional component of ripeness, and we need not decide whether they meet the prudential requirements of ripeness.

Taking a different tack, Wolfson asserts that the advice he received from the Ethics Committee failed to dispel his concerns regarding the scope of the pledges and promises clause. Wolfson twice sought an advisory opinion from the Ethics Committee. In December 2007, following the district court's dismissal of *Wolfson I*, Wolfson sought guidance on several issues, including whether he could state his opinions on "disputed legal and political issues," endorse other candidates, and personally solicit campaign contributions. In September 2006, during his campaign for judicial office, Wolfson inquired whether the Code's restrictions on political activity by judicial candidates would prohibit him from speaking publicly about a pending ballot initiative. In response to these requests, Wolfson received two Advisory Opinions, Nos. 08-01 and 06-05.

Wolfson asserts that the advisory opinions have *not only* failed to dispel the chilling effect of the pledges and promises clause, but actually *heightened* it. Wolfson does not, however, state *why* the advisory opinions increased the chilling effect of the pledges and promises clause. Both Advisory Opinion 08-01 and Advisory Opinion 06-05 state that "a candidate

may express views on any disputed issue," subject to and consistent with the pledges and promises clause. *See also White*, 536 U.S. 765, 781-82. The advisory opinions merely incorporate the pledges and promises clause. The opinions may not have provided Wolfson with the level of clarity he desired, but there is no basis on which to conclude they chilled his speech. Wolfson's conclusory assertion of chilling is therefore insufficient. *See Getman* 328 F.3d at 1905 (a plaintiff may not "challenge the constitutionality of a statute on First Amendment grounds by nakedly asserting that his or her speech was chilled by the statute").

Insofar as Wolfson alleges a fear that the pledges and promises clause continues to restrict the speech of judges, such a claim is also not ripe. Wolfson is not a judge and may never become one. The application of the Code to Wolfson as a judge is a long step removed from Wolfson's claims as a candidate. A claim is not ripe for judicial resolution "if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (internal quotation marks omitted). Wolfson cannot ground a claim against the pledges and promises clause on its hypothetical application to him as a judge. Wolfson can become a candidate of his own accord; Wolfson cannot similarly control his appointment to judicial office or the outcome of an election. Insofar as Wolfson purports to redress injuries to judges' speech, such claims are also not ripe. Wolfson cannot assert the constitutional rights of judges when he is not, and may never be, a member of that group. *See, e.g.*, *Feldman*, 504 F.3d at 851 (political action committee plaintiff did not face hardship where "the organization would not itself have risked civil sanction or criminal penalty").

## IV.

Defendants have also asserted that this action is barred by collateral estoppel. To support this argument, defendants

point to the district court's order dismissing *Wolfson I* on the basis of prudential ripeness. Defendants assert that Wolfson has not satisfied the preconditions to a subsequent action set forth by the district court's *Wolfson I* order and is therefore barred from bringing this action.

**[19]** "[T]he doctrine of collateral estoppel can apply to preclude relitigation of both issues of law and issues of fact if those issues were conclusively determined in a prior action." *United States v. Stauffer Chem. Co.*, 464 U.S. 165, 170-71 (1984). Under this doctrine, a party is precluded from relitigating an issue if four requirements are met: (1) there was a full and fair opportunity to litigate the issue in the previous action; (2) the issue was actually litigated; (3) there was final judgment on the merits; and (4) the person against whom collateral estoppel is asserted was a party to or in privity with a party in the previous action. *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1050 (9th Cir. 2008). We review the availability of collateral estoppel de novo. *Pardo v. Olson & Sons, Inc.*, 40 F.3d 1063, 1066 (9th Cir. 1994).

**[20]** Here, the district court's dismissal was not an adjudication of the merits. Rather, the district court set forth a curable defect in jurisdiction: ripeness. As a curable defect, a second action on the same claim is permissible after correction of the deficiency. *See* 18A Wright & Miller, Federal Practice & Procedure § 4436 (2000). The parties disagree, however, as to whether the deficiency has been corrected.

In *Wolfson I*, the district court concluded that Wolfson had satisfied the constitutional component of ripeness. Turning to prudential ripeness considerations, however, the district court exercised its discretion to decline jurisdiction, concluding that Wolfson faced "insufficient hardship to warrant the exercise of jurisdiction given the lack of any real or imminent threat of enforcement." The district court observed that Wolfson had sought, and timely received, an advisory ethics opinion from the Ethics Committee in the past. Wolfson could seek an eth-

ics advisory opinion again to obtain clarification regarding the scope of the Code, which might allay his concerns and avoid litigation.

Defendants draw their collateral estoppel argument from the following line in the district court's order: "since '[p]rudential considerations of ripeness are discretionary' [citation], the Court will exercise its discretion to decline jurisdiction over the dispute until Plaintiff actually faces either an enforcement proceeding or the imminent threat of one." Defendants assert that this means that Wolfson is collaterally estopped such that he "is not allowed to come back to federal court to challenge the Code unless and until he 'actually faces either an enforcement proceeding or the threat of one.' " The "curable defect" in jurisdiction, in defendants' view, relates to the existence of enforcement activity, and not a request for an advisory opinion.

**[21]** We hold that the district court's dismissal of *Wolfson I* was curable on Wolfson's submission of a request for an advisory opinion. The central consideration of the district court's order was that Wolfson could seek an advisory opinion from the Ethics Committee. With this alternative avenue of relief available, and little to no immediate hardship to Wolfson, the prudential balance weighed against the exercise of jurisdiction. Contrary to defendants' argument, the district court's dismissal of *Wolfson I* was not premised solely on the lack of "an enforcement proceeding or the threat of one."

**[22]** Even if the district court's order of dismissal was unclear whether Wolfson must request an advisory opinion or whether Wolfson must be subject to an enforcement action, we conclude that the present action is not barred by collateral estoppel. Where a decision " 'could have been rationally grounded upon an issue other than that which the defendant seeks to foreclose from consideration, collateral estoppel does not preclude relitigation of the asserted issue.' " *Eureka Fed. Sav. & Loan Ass'n v. Am. Cas. Co. of Reading, Pa.*, 873 F.2d

229, 233 (9th Cir. 1989), *quoting Davis & Cox v. Summa Corp.*, 751 F.2d 1507, 1518-19 (9th Cir. 1985); *see also Steen v. John Hancock Mut. Life Ins. Co.*, 106 F.3d 904, 912 (9th Cir. 1997) ("Collateral estoppel is inappropriate if there is any doubt as to whether an issue was actually litigated in a prior proceeding") (internal quotation marks omitted). Defendants' assertion of collateral estoppel is based on an isolated line of the district court's order. Because Wolfson's reading of the order is, at the very minimum, fair, collateral estoppel does not bar this action. *See, e.g., Segal v. Am. Tel. & Tel. Co.*, 606 F.2d 842, 845 n.2 (9th Cir. 1979).

**[23]** Subsequent to the dismissal of *Wolfson I*, and consistent with the district court's instruction, Wolfson sought and obtained a formal advisory opinion from the Ethics Committee. Wolfson has thereby cured the defect in jurisdiction identified by the district court in its discretionary declination of jurisdiction over *Wolfson I*.

## V.

**[24]** The remaining issues will not take long. Certain defendants contend that this action is barred by Eleventh Amendment immunity, which "erects a general bar against federal lawsuits brought against a state." *Porter*, 319 F.3d at 491, *citing Papasan v. Allain*, 478 U.S. 265, 276 (1986). The Eleventh Amendment does not bar suits against a state official for prospective relief. *Id.*, *citing Ex parte Young*, 209 U.S. 123 (1908). The Eleventh Amendment poses no bar to Wolfson's claims here.

**[25]** Certain defendants also argue that the federal courts should abstain from deciding this case under the doctrine explained in *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496 (1941), sometimes known as "*Pullman* abstention." *Pullman* abstention "is an extraordinary and narrow exception to the duty of a [d]istrict [c]ourt to adjudicate a controversy." *Canton v. Spokane Sch. Dist. No. 81*, 498 F.2d 840,

845 (9th Cir. 1974) (internal quotation marks omitted), *over-ruled on other grounds as recognized by Heath v. Cleary*, 708 F.2d 1376, 1378-79 n.2 (1985). *Pullman* abstention is appropriate only where (1) there are sensitive issues of social policy "upon which the federal courts ought not to enter unless no alternative to its adjudication is open," (2) constitutional adjudication could be avoided by a state ruling, and (3) resolution of the state law issue is uncertain. *Id.* (internal quotation marks omitted). In First Amendment cases, the first *Pullman* element "will almost never be present because the guarantee of free expression is always an area of particular federal concern." *Ripplinger v. Collins*, 868 F.2d 1043, 1048 (9th Cir. 1989). " 'Indeed, constitutional challenges based on the [F]irst [A]mendment right of free expression are the kind of cases that the federal courts are particularly well-suited to hear. That is why abstention is generally inappropriate when [F]irst [A]mendment rights are at stake.' " *Porter*, 319 F.3d at 492-93, *quoting J-R Distribs., Inc. v. Eikenberry*, 725 F.2d 482, 487 (9th Cir. 1984), *overruled on other grounds by Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491 (1985). We hold that *Pullman* abstention is not required here.

**[26]** Finally, Wolfson and defendants devote substantial attention in their briefs to the merits of this action. We will not address these contentions because it would be premature for us to do so. We are also precluded from considering the merits of this action as a matter of procedure. Wolfson's motion for summary judgment was denied by the district court. Denial of a motion for summary judgment is ordinarily not an appealable order. *See Hopkins v. City of Sierra Vista*, 931 F.2d 524, 529 (9th Cir. 1991); *see also Jones-Hamilton Co. v. Beazer Materials & Servs., Inc.*, 973 F.2d 688, 694 n.2 (9th Cir. 1992) (exceptions to general rule that denial of summary judgment not appealable). The district court's denial here of Wolfson's summary judgment motion is not an appealable order. *See Burke v. Ernest W. Hahn, Inc.*, 592 F.2d 542, 546 (9th Cir. 1979) ("denial of a motion for summary judgment is not an appealable order . . . even where an action

is incorrectly dismissed by the district court for lack of subject matter jurisdiction") (citation omitted).

## VI.

In conclusion, the district court erred by dismissing this action as moot. This action falls within the exception to mootness for actions "capable of repetition, yet evading review." Wolfson has stated an intention to seek office in the future that is sufficient, under our law, to preserve jurisdiction. The district court's finding that Wolfson had not expressed an intention to seek elected judicial office in the future was clearly erroneous. We hold that some of Wolfson's claims against the solicitation, endorsement, and campaigning prohibitions are ripe, but Wolfson's claims regarding the pledges and promises clause are not ripe.

**REVERSED and REMANDED.**

---

GRABER, Circuit Judge, concurring in part and dissenting in part:

I respectfully concur in part and dissent in part. I agree with the majority on all issues except the ripeness of Plaintiff's claims against the Arizona Commission on Judicial Conduct.

The majority holds that Plaintiff's claims regarding the solicitation, campaigning, and endorsement clauses are both constitutionally and prudentially ripe as to all the defendants collectively. I agree with that conclusion. But, under the circumstances, we also should consider whether those claims are ripe as to each of the defendants. *See, e.g.*, *Charter Fed. Sav. Bank v. Office of Thrift Supervision*, 976 F.2d 203, 209 (4th Cir. 1992) (holding that a claim was ripe as to one defendant but not as to another, who could take action against the plaintiff only upon the occurrence of future contingent events). I

bear in mind that a claim is not ripe "if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (internal quotation marks omitted).

Here, the Arizona Chief Bar Counsel supervises the initial screening of matters and oversees the prosecution of discipline cases. Ariz. R. Sup. Ct. 51(a). Plaintiff would face a genuine threat of imminent prosecution by the Arizona Chief Bar Counsel if he were to campaign as he desires and intends to do. This claim rests on "a single factual contingency," namely, Plaintiff's participation in a judicial election, rather than on "a 'series of contingencies.' " *Educ. Credit Mgmt. Corp. v. Coleman (In re Coleman)*, 560 F.3d 1000, 1005 (9th Cir. 2009). Thus, I conclude that Plaintiff's claims regarding the solicitation, campaigning, and endorsement clauses are ripe as to the Arizona Chief Bar Counsel.

Similarly, Plaintiff's claims regarding the solicitation, campaigning, and endorsement clauses are ripe as to the defendants who are members of the Disciplinary Commission of the Arizona Supreme Court. Those defendants would become involved in enforcing the canons if the Chief Bar Counsel were to prosecute Plaintiff—a threat that is genuine—and if either Plaintiff or the Arizona State Bar sought review of the hearing officer's report. Ariz. R. Sup. Ct. 49(c)(1), 57(l). Plaintiff's appeal of a report unfavorable to him is a foregone conclusion, and I would not rely on the speculation that the Bar might refrain from appealing a report unfavorable to it. Thus, I conclude that there is a genuine threat that the Disciplinary Commission would become involved in imminent enforcement of the canons against Plaintiff.

By contrast, under its own rules, the Arizona Commission on Judicial Conduct will have disciplinary jurisdiction over Plaintiff *only* if he runs for judicial office *and* wins. The outcome of an unspecified future election is plainly an uncertain "contingent future event[ ]" within the meaning of *Texas*. 523

U.S. at 300 (internal quotation marks omitted). Although the Commission ultimately might have retrospective jurisdiction over Plaintiff's actions as a candidate, if he were to be elected to judicial office, the possibility of that occurring remains purely speculative.

Even in the First Amendment context, a plaintiff must have a reasonable fear that the law in question will be enforced against him or her. *Cal. Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088, 1095 (9th Cir. 2003). Here, because the possibility of jurisdiction by the Commission is so speculative, Plaintiff faces no "*genuine* threat of *imminent* prosecution" before that body. *San Diego County Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1126 (9th Cir. 1996) (internal quotation marks omitted). Because the potential for the Commission to discipline Plaintiff is speculative and rests on a series of contingencies, not all of which are within his control, I would hold that Plaintiff's claims against Defendants who are members of the Commission are not ripe and must be dismissed without prejudice. In all other respects, I join the opinion.