*1149 OPINION
PAEZ, Circuit Judge:
A state sets itself on a collision course with the First Amendment when it chooses to popularly elect its judges but restricts a candidate’s campaign speech. The conflict arises from the fundamental tension between the ideal of apolitical judicial independence and the critical nature of unfettered speech in the electoral political process. Here we must decide whether several provisions in the Arizona Code of Judicial Conduct restricting judicial candidate speech run afoul of First Amendment protections. Because we are concerned with content-based restrictions on electioneering-related speech, those protections are at their apex. Arizona, like every other state, has a compelling interest in the reality and appearance of an impartial judiciary, but speech restrictions must be narrowly tailored to serve that interest. We hold that several provisions of the Arizona Code of Judicial Conduct unconstitutionally restrict the speech of non judge candidates because the restrictions are not sufficiently narrowly tailored to survive strict scrutiny. Accordingly, we reverse the district court’s grant of summary judgment in favor of Defendants.
I.
Arizona counties with fewer than 250,000 people popularly elect local judicial officers. See Ariz. Const, art. VI, §§ 12, 40.[1] The Arizona Code of Judicial Conduct[2] (the “Code”) regulates the conduct of judges campaigning for retention and judicial candidates campaigning for office. The Code provides for discipline if a candidate is elected as a judge, but lawyers who are unsuccessful in their candidacy may also be subject to discipline under the Arizona Rules of Professional Conduct.[3] See Ariz.Rev.Stat. Ann. § 17A, Sup.Ct. Rules, Rule 42, Rules of Prof. Conduct, ER 8.2 (2003).
Plaintiff Randolph Wolfson was an unsuccessful candidate for judicial office in Mohave County, Arizona in 2006 and 2008. Wolfson I, 616 F.3d at 1052-53. He intends to run in a future election. Id. at 1054-55. As a candidate, Wolfson wished to conduct a number of activities he believed to be prohibited by the Code, but refrained from doing so, fearing professional discipline.[4] He brought this action challenging the facial and as-applied constitutionality of certain provisions of the Code, seeking declaratory and injunctive relief. Defending this appeal are the members of the Arizona Commission on Judicial Conduct (the “Commission”) and Arizona Chief Bar Counsel (“State Bar *1150 Counsel”), collectively the “Arizona defendants.” [5]
Wolfson challenges five clauses of Rule 4.1 of the Code (the “Rules”):
(A) A judge or judicial candidate shall not do any of the following:
(2) make speeches on behalf of a political organization or another candidate for public office;
(3) publicly endorse or oppose another candidate for any public office;
(4) solicit funds for or pay an assessment to a political organization or candidate, make contributions to any candidate or political organization in excess of the amounts permitted by law, or make total contributions in excess of fifty percent of the cumulative total permitted by law....
(5) actively take part in any political campaign other than his or her own campaign for election, reelection or retention in office;
(6) personally solicit or accept campaign contributions other than through a campaign committee authorized by Rule 4.4.... [6]
Ariz.Rev.Stat. Ann. § 17A, Sup.Ct. Rules, Rule 81, Code of Jud. Conduct (2009).
This is the second time that this case is before us. We previously held in Wolfson I that Wolfson’s challenges to these clauses (hereinafter the “solicitation” clause (6) and “political activities” clauses, (2)-(5)) were justiciable and remanded them to the district court to consider them on the merits. Wolfson I, 616 F.3d at 1054-62, 1066-67. With respect to his challenge to a now-defunct “pledges and promises” clause, we held that Wolfson lacked standing to challenge it insofar as it applied to the speech of judges. Id. at 1064. ‘Wolf-son cannot assert the constitutional rights of judges when he is not, and may never be, a member of that group.” Id.
On remand, ruling on cross-motions for summary judgment, the district court applied a balancing test articulated by the Seventh Circuit in Siefert v. Alexander, 608 F.3d 974 (7th Cir.2010), and Bauer v. Shepard, 620 F.3d 704 (7th Cir.2010), and upheld the constitutionality of the five challenged Code provisions. Wolfson II, 822 F.Supp.2d at 929-30. The balancing test from Siefert/Bauer “derives from the line of Supreme Court cases upholding the limited power of governments to restrict their employees’ political speech in order to promote the efficiency and integrity of government services.” Id. at 929. The district court held that this standard “strikes an appropriate balance between the weaker First Amendment rights at stake and the stronger State interests in regulating the way it chooses its judges,” apparently because the speech at issue was not “core speech” deserving of strict scrutiny but “behavior short of true speech.” Id. at 929-30.
The district court proceeded to balance the interests of the state against the interests of a judicial candidate. With respect to the political activities restrictions (the campaigning and endorsement clauses), the district court held that “indorsements, making speeches, and soliciting funds on behalf of other candidates is not ... core political speech.” Id. at 931. The district court distinguished between announcing one’s own political views or qualifications — speech protected by Republican Party of Minn. v. White, 536 U.S. 765, 788, 122 S.Ct. 2528, 153 L.Ed.2d *1151 694 (2002) (White I) — and the type of speech prohibited by the Rules, which only “advance[s] other candidates’ political aspirations, or ... garner[s] votes by way of political coattails.” Wolfson II, 822 F.Supp.2d at 931-32. Moreover, although the district court recognized that its review was “limited to the constitutionality of the Rules as applied to judicial candidates who are not also sitting judges,” id. at 928, it nonetheless
rejected] the suggestion that judicial candidates ought to enjoy greater freedom to engage in partisan polities than sitting judges. An asymmetrical electoral process for judges is unworkable. Fundamental fairness requires a level playing field among judicial contenders. Candidates for judicial office must abide by the same rules imposed on the judges they hope to become.
Id. at 932. The district court assumed the constitutional validity of the Rules restricting political activities as applied to sitting judges, holding that “the Pickering line of cases [upholding the government’s power to restrict employees’ political speech to promote efficiency and integrity of government services] remains relevant to restrictions on the speech of sitting judges.” Id. The court concluded that Rules 4.1(A)(2)-(5) appropriately balanced the state’s interest in “protecting the due process rights of litigants and ensuring the real and perceived impartiality of the judiciary” against a candidate’s interest in “participating in the political campaigns of other candidates” and upheld the political activities clauses as constitutional. Id.
As for the solicitation clause (Rule 4.1(A)(6)) prohibiting a judicial candidate from “personally soliciting] or accepting] campaign contributions other than through a campaign committee,” the district court held that it was constitutional as applied to non judge candidates because it struck “a constitutional balance” between the state’s interest in the appearance and actuality of an impartial judiciary and a candidate’s need for funds. Id. at 931. The district court found that all forms of personal solicitation, whether in-person or via signed mass mailings, created “the same risk of coercion and bias.” Id. Wolfson timely appealed.
II.
A.
We review de novo an order granting summary judgment on the constitutionality of a statute. See Nunez by Nunez v. City of San Diego, 114 F.3d 935, 940 (9th Cir.1997).
B.
Wolfson seeks to invalidate the challenged Rules on their face, including as to sitting judges campaigning for retention or reelection. In Wolfson I, however, we held that “Wolfson cannot assert the constitutional rights of judges when he is not, and may never be, a member of that group.” 616 F.3d at 1064. Nonetheless, although we reject the Arizona defendants’ argument, which the district court adopted, that the balancing test applicable to government employee speech cases also applies to sitting judges and thus fairly extends to non judge candidates campaigning for office, we must establish the scope of our review of the challenged Rules.
We decline to adopt the district court’s approach because such reasoning requires a series of unnecessary constitutional decisions.[7] Rather, our analysis of *1152 the challenged Rules is based on Wolfson’s status as a non judge candidate. While the Rules apply to judges whether or not a judge is actively campaigning for retention or reelection, they only apply to non judge candidates during an election campaign for judicial office.[8] There is a meaningful distinction in how the Rules actually apply to judges versus non judge candidates that may warrant distinct levels of scrutiny. Regulated non judge speech only takes place during a campaign. As noted above, political speech is subject to the highest degree of First Amendment protection. Because Wolfson’s desired speech would only take place in the context of a political campaign for judicial office, we do not decide whether the restrictions as applied to judges — whether campaigning or not— fit into the “narrow class of speech restrictions” that may be constitutionally permissible if “based on an interest in allowing governmental entities to perform their functions.” Citizens United v. Fed. Election Comm’n, 558 U.S. 310, 341, 130 S.Ct. 876, 175 L.Ed.2d 753 (2010).
We are not persuaded that “fundamental fairness,” see Wolfson II, 822 F.Supp.2d at 929, warrants making an advisory decision about the constitutional speech rights of judges who are not presently before us and whose rights Wolfson cannot assert, Wolfson I, 616 F.3d at 1064. Under strict scrutiny, see Part III.A, the proponents of a speech regulation must establish a compelling state interest served by the regulation. Neither the Commission nor the State Bar Counsel has argued that Arizona has a compelling state interest in applying the same election regulations to incumbent sitting judges as to candidates who are not sitting judges— only that such an equal application is principled, logical, and fair.
Our decision to limit our review to non judge candidates is ultimately based on judicial restraint. We need not decide today what restrictions on judges’ speech are constitutionally justified by the interest in allowing the judiciary to function optimally, nor are we squarely presented with that question. We neither “ ‘anticipate a question of constitutional law in advance of the necessity of deciding it’ nor ‘formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied.’ ” Wash. State Grange v. Wash. State Republican Party, 552 U.S. 442, 450, 128 S.Ct. 1184, 170 L.Ed.2d 151 (2008) (quoting Ashwander v. TVA 297 U.S. 288, 347, 56 S.Ct. 466, 80 L.Ed. 688 (1936) (Brandéis, J., concurring)). The only constitutional question we address is whether the challenged Rules violate the First Amendment rights of non judge candidates.
III.
A.
Strict scrutiny applies to this First Amendment challenge. The regulations in question are content- and speaker-based *1153 restrictions on political speech, which receives the most stringent First Amendment protection. Republican Party of Minn. v. White, 416 F.3d 738, 748-49 (8th Cir.2005) (White II); see also Eu v. San Francisco Cnty. Democratic Cent. Comm., 489 U.S. 214, 223, 109 S.Ct. 1013, 103 L.Ed.2d 271 (1989) (“[T]he First Amendment has its fullest and most urgent application to speech uttered during a campaign for political office.” (internal quotation marks omitted)). We recently applied strict scrutiny to another state statute regulating judicial elections because it was, “on its face, a content-based restriction on political speech and association [which] thereby threatened] to abridge a fundamental right.” Sanders Cnty. Republican Cent. Comm. v. Bullock, 698 F.3d 741, 746 (9th Cir.2012) (holding unconstitutional a ban on political party endorsement of judicial candidates).
Content-based restrictions on speech receive strict scrutiny. See United States v. Playboy Entm’t Grp., Inc., 529 U.S. 803, 813, 120 S.Ct. 1878, 146 L.Ed.2d 865 (2000). Here, the Rules at issue
censor speech based on content in the most basic of ways: They prevent candidates from speaking about some subjects [who they endorse or on whose behalf they can speak if that person is running for office or if the entity is a political party] ...; and they prevent candidates from asking for support in some ways (campaign funds) but not in others (a vote, yard signs).
Carey v. Wolnitzek, 614 F.3d 189, 198-99 (6th Cir.2010). The canons do not address any of the “categorical carve-outs” of proscribable speech. See id. at 199. Nor are they the types of regulations to which the Supreme Court has applied a less rigorous standard of review, such as time, place and manner restrictions, commercial speech, or expressive conduct. Id.
Every sister circuit except the Seventh that has considered similar regulations since White I has applied strict scrutiny as the standard of review. See Wersal v. Sexton, 674 F.3d 1010, 1019 (8th Cir.2012) (en banc), cert. denied, — U.S. -, 133 S.Ct. 209, 184 L.Ed.2d 40 (2012); Carey, 614 F.3d at 198-99; White II, 416 F.3d at 749, 764-65; Weaver v. Bonner, 309 F.3d 1312, 1319 (11th Cir.2002). We are not persuaded by the Seventh Circuit’s approach, which the Arizona defendants urge us to adopt by asking us to affirm the district court.
The Seventh Circuit treated the solicitation ban in Siefert as a “campaign finance regulation” and applied the “closely drawn scrutiny” framework of Buckley v. Valeo, 608 F.3d at 988 (citing 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976) (per curiam)). The court treated the solicitation ban like a restriction on a campaign contribution— though by default, because the solicitation ban was not an expenditure restriction. Id. Contrary to the Arizona defendants’ argument, the solicitation clause at issue here is not a restriction on a campaign contribution within the meaning of Buckley, 424 U.S. at 26-27, 96 S.Ct. 612. Arizona’s solicitation ban does nothing at all to limit contributions to a judicial candidate’s campaign — either in amount or from certain persons or groups. Contribution restrictions, like those at issue in Buckley, restrict the speech of potential contributors. 424 U.S. at 21-22, 96 S.Ct. 612. The Rule at issue here restricts only the solicitation for the contributions — the speech of the candidate.[9] Indeed, Buckley says *1154 nothing at all about solicitation, other than to note that candidates will ask for contributions. Buckley’s framework is inapposite here.[10]
Considering a rule prohibiting a judge or judicial candidate from making endorsements or speaking on behalf of a partisan candidate or platform, the Seventh Circuit applied “a balancing approach” derived from a line of cases determining the speech rights of government employees. Siefert, 608 F.3d at 983-87. As noted in Part II.B, here we consider only the speech rights of Wolfson as a private citizen and judicial candidate — not yet, and perhaps never, a government employee. “[Wolfson] [i]s not a sitting judge but a challenger; he ha[s] not voluntarily entered into an employment relationship with the State or surrendered any First Amendment rights. His speech may not be controlled or abridged in this manner.” See White I, 536 U.S at 796, 122 S.Ct. 2528 (Kennedy, J., concurring). For the reasons discussed above, we decline to extend the rationale from the employee-speech cases to apply a lower level of scrutiny to the restrictions on Wolfson’s First Amendment rights during a judicial campaign.
The Seventh Circuit also reasoned that a balancing approach was appropriate because endorsements are “a different form of speech” outside of “core” political speech thus having “limited communicative value,” and when judges make endorsements they are “speaking as judges, and trading on the prestige of their office to advance other political ends.” Siefert, 608 F.3d at 983, 984, 986.[11] We do not hold the same view of endorsements by non-judge candidates. In Sanders County, we held that endorsements of judicial candidates are no different from other types of political speech: “Thus, political speech— including the endorsement of candidates for office — is at the core of speech protected by the First Amendment.” 698 F.3d at 745. Similarly, endorsements by candidates for office is also political speech protected by the First Amendment. Moreover, endorsements made by a non-judge candidate cannot trade on the prestige of an office that candidate does not yet hold.
We share the Seventh Circuit’s concerns about protecting litigants’ due process rights, which we recognize as a compelling state interest. That court reasoned that because “restrictions on judicial speech may, in some circumstances, be required by the Due Process Clause,” states could regulate even political speech by judges if the regulations served the *1155 state’s interest in protecting litigants’ constitutional right to due process. Siefert, 608 F.3d at 984. We agree that due process concerns are paramount, but this concern does not justify a categorically lower level of constitutional scrutiny for political speech by judicial candidates. Applying strict scrutiny, we can adequately assess whether regulations on a judicial candidate’s political speech are narrowly tailored to serve the state’s compelling interest in protecting litigants’ due process rights. Narrow tailoring is most appropriate. Although we could scarcely imagine a more compelling state interest, we also recognize that “due process” concerns arise not in the ether, but “only ... in the context of judicial proceedings.” See Michelle T. Friedland, Disqualification or Suppression: Due Process and the Response to Judicial Campaign Speech, 104 Colum. L.Rev. 563, 613 (2004).[12] We are mindful of the fact that we should endeav- or to protect litigants from even the “potential for due process violations” or the “probability of unfairness.” See White I, 536 U.S. at 815-16, 122 S.Ct. 2528 (Ginsburg, J., dissenting) (emphasis added) (internal quotation marks omitted). The potential for and probability of a problem that in actuality arises only in real cases does not, however, translate into a generalized concern about the appearance or reality of an impartial judiciary warranting a lower level of scrutiny. Indeed, the Eighth Circuit identified the flaw in this argument.
It is the general practice of electing judges, not the specific practice of judicial campaigning, that gives rise to impartiality concerns because the practice of electing judges creates motivations for sitting judges and prospective judges in election years and non-election years to say and do things that will enhance their chances of being elected.
Weaver, 309 F.3d at 1320; accord White I, 536 U.S. at 792, 122 S.Ct. 2528 (O’Connor, J., concurring) (“If the State has a problem with judicial impartiality, it is largely one the State brought upon itself by continuing the practice of popularly electing judges.”).[13] Moreover, there is an equally compelling state interest in the free flow of information during a political campaign. “Deciding the relevance of candidate speech is the right of the voters, not the State.” White I, 536 U.S. at 794, 122 S.Ct. 2528 (Kennedy, J., concurring). Whether and to what extent a judicial candidate chooses to engage in activities such as endorsing and making speeches on behalf of other candidates, fundraising for or taking part in other political campaigns, or asking for contributions is information that the electorate can use to decide whether he or she is qualified to hold judicial office. “The vast majority of states have judicial elections because of a belief that judges as government officials should be accountable to their constituents. By making this choice, the states, by definition, are turning judges into politicians.” Erwin Chemerinsky, Restrictions on the Speech *1156 of Judicial Candidates Are Unconstitutional, 35 Ind. L.Rev. 735, 736 (2002). Along with knowing a candidate’s views on legal or political issues, voters have a right to know how political their potential judge might be.[14] To the extent states wish to avoid a politicized judiciary, they can choose to do so by not electing judges.
B.
Under strict scrutiny, the Arizona defendants have the burden to prove that the challenged Rules further a compelling interest and are narrowly tailored to achieve that interest. Citizens United, 558 U.S. at 340, 130 S.Ct. 876. First we consider Arizona’s state interests. Then, we analyze whether the solicitation clause (Rule 4.1(A)(6)) and the political activities clauses (Rules 4.1(A)(2)-(5)) are narrowly tailored to serve those interests.
1.
Every court to consider the issue has affirmed that states have a compelling interest in the appearance and actuality of an impartial judiciary. See, e.g., White I, 536 U.S. at 775-76, 122 S.Ct. 2528. The meaning of “impartiality” is lack of bias for or against either party to a case. Id. at 775, 122 S.Ct. 2528. This definition accords with the idea that due process violations arise only in case-specific contexts. The Supreme Court has also recognized that states have a compelling interest in preventing corruption or the appearance of corruption through campaign finance regulations. Buckley, 424 U.S. at 26-27, 96 S.Ct. 612; see also Citizens United, 558 U.S. at 357, 130 S.Ct. 876. Thus, we recognize that Arizona has a compelling interest in an uncorrupt judiciary that appears to be and is impartial to the parties who appear before its judges.
The Arizona defendants also argue for two other compelling interests that we do not find persuasive. First, the Commission defendants argue that “the State has a compelling interest in preventing candidates (who will after all be the next judges if and when elected) from trampling on the interests of impartiality and public confidence.” This argument is, essentially, that states have a compelling interest in regulating candidates’ speech; we do not find an interest in regulating speech per se to be compelling. We do agree, however, that states have a compelling interest in maintaining public confidence in the judiciary. In a similar vein, State Bar Counsel argues that Arizona has a compelling interest in avoiding “judicial campaign abuses that threaten to imperil public confidence in the fairness and integrity of the nation’s elected judges.” But, as explained above, any impediment of public confidence has its roots in the very nature of judicial elections, and not in the speech of candidates who must participate in those elections to become judges. See White I, 536 U.S. at 792, 122 S.Ct. 2528 (O’Connor, J., concurring).[15] If a judicial candidate wishes to engage in politicking to achieve a seat on the bench, keeping the public igno *1157 rant of that fact may conceal valuable information about how well that candidate may uphold the office of an ideally impartial, apolitical adjudicator.
Second, the Commission defendants argue that Arizona has a compelling interest in “preventing judges and judicial candidates from using the prestige of their office or potential office for purposes not related to their judicial duties.” We are not persuaded by this argument as applied to non judge candidates, who cannot abuse the prestige of an office they do not yet and may never hold.
2.
The solicitation clause prohibits a judicial candidate from “personally soliciting] or accepting] campaign contributions other than through a campaign committee authorized by Rule 4.4.” Rule 4.1(A)(6).[16] The Code defines “personally solicit” as “a direct request made by a judge or a judicial candidate for financial support or in-kind services, whether made by letter, telephone, or any other means of communication.” Ariz.Rev.Stat. Ann. § 17A, Sup.Ct. Rules, Rule 81, Code of Jud. Conduct, “Terminology” (2009). We hold that Rule 4.1(A)(6) is unconstitutional as applied to non judge judicial candidates because it restricts speech that presents little to no risk of corruption or bias towards future litigants and is not narrowly tailored to serve those state interests.
Arizona’s sweeping definition of “personally solicit” encompasses methods not likely to impinge on even the appearance of impartiality. The Sixth Circuit recently invalidated a similar clause in Kentucky that also extended beyond one-on-one, in-person solicitations to group solicitations, telephone calls, and letters. Carey, 614 F.3d at 204. We agree with our sister court’s cogent analysis of this issue. “[I]n-direct methods of solicitation [such as speeches to large groups and signed mass mailings] present little or no risk of undue pressure or the appearance of a quid pro quo.” Id. at 205. The clauses are also underinclusive: a personal solicitation by a campaign committee member who may be the candidate’s best friend or close professional associate (such as a law practice partner) is likely to have a greater risk for “coercion and undue appearance” than a signed mass mailing or request during a speech to a large group. Id. Moreover, the Code does not prohibit a candidate’s campaign committee from disclosing to the candidate the names of contributors and solicited non-contributors.
That omission suggests that the only interest at play is the impolitic interpersonal dynamics of the candidate’s request for money, not the more corrosive reality of who gives and how much. If the purported risk addressed by the clause is that the judge or candidate will treat donors and non-donors differently, it is knowing who contributed and who balked that makes the difference, not who asked for the contribution.
M[17] The lack of narrow tailoring is obvious here: if impartiality or absence of corruption is the concern, what is the point *1158 of prohibiting judges from personally asking for solicitations or signing letters, if they are free to know who contributes and who balks at their committee’s request? Wersal teaches that the in-person “ ‘ask’ is precisely the speech [a state] must regulate to maintain its interest in impartiality and the appearance of impartiality” because of the greater risk of a quid pro quo. 674 F.3d at 1029-31. Indeed, we agree with State Bar Counsel’s argument that “the very act of asking for money, personally, creates the impression that judge (and justice) may be for sale.” But the clause here sweeps more broadly. It is not necessary “to decide today whether a State could enact a narrowly tailored solicitation clause — say, one focused on one-on-one solicitations or solicitations from individuals with cases pending before the court — only that this clause does not do so narrowly.” Carey, 614 F.3d at 206 (emphasis in original).[18] The solicitation clause is invalid as applied to non judge candidates.
3.
We analyze Rules 4.1(A)(2)-(5) as the “political activities” clauses. Judicial candidates are prohibited from speechifying for another candidate or organization, endorsing or opposing another candidate, fundraising for another candidate or organization, or actively taking part in any political campaign other than his or her own. These clauses are also not sufficiently narrowly tailored to serve the state’s interest in an impartial judiciary, and are thus unconstitutional restrictions on political speech of non judge candidates for judicial office.
Rules 4.1(A)(2)-(4) — prohibiting speechifying, endorsements, and fundraising— present the closest question. There is an argument that these rules are sufficiently narrowly tailored to be constitutional because they curtail speech that evidences bias towards a particular (potential) party within the scope of White I: the candidate or political organization endorsed or spoken of favorably by the judicial candidate. A plurality of the Eighth Circuit, sitting en banc, upheld a nearly identical Minnesota prohibition on a judge or judicial candidate endorsing “another candidate for public office” because such an endorsement “creates a risk of partiality towards the endorsed party and his or her supporters.” Wersal, 674 F.3d at 1024, 1025. The plurality concluded that the clause was narrowly tailored to serve the state’s compelling interest in the appearance and reality of an impartial judiciary. Id. at 1028.[19]
*1159 Nonetheless, we hold that these regulations are underinclusive because they only address speech that occurs beginning the day after a non judge candidate has filed his intention to run for judicial office.[20] The day before a private citizen becomes a judicial candidate, he or she could have been a major fundraiser or campaign manager for another elected official, or may have donated large sums of money to another’s political campaign, or may have himself been an elected politician. The Supreme Court confronted a similar underinclusive issue in White I. There, in explaining why the “announce clause” was underinclusive, the Court said
In Minnesota, a candidate for judicial office may not say “I think it is constitutional for the legislature to prohibit same-sex marriages.” He may say the very same thing, however, up until the very day before he declares himself a candidate, and may say it repeatedly (until litigation is pending) after he is elected. As a means of pursuing the objective of open-mindedness that respondents now articulate, the announce clause is so woefully underinclusive as to render belief in that purpose a challenge to the credulous.
White I, 536 U.S. at 779-80, 122 S.Ct. 2528. Here too, Rules 4.1 (A)(2)-(4) are “woefully underinclusive” because they only address speech made after a candidate has filed his intention to enter the race. Id. at 780, 122 S.Ct. 2528. Contrary to the dissent, we fail to see why this same concern does not apply here.
Moreover, the Arizona defendants have failed to show why the less restrictive remedy of recusal of a successful candidate from any case in which he or she was involved in a party’s political campaign or gave an endorsement is an unworkable alternative. “[Bjecause restricting speech should be the government’s tool of last resort, the availability of obvious less-restrictive alternatives renders a speech restriction overinelusive.” Valle Del Sol Inc. v. Whiting, 709 F.3d 808, 826 (9th Cir.2013). Here, it seems that if a candidate indeed becomes a judge, a less restrictive means of addressing the state’s concerns would be to require recusal in cases where the new judge’s bias against or in favor of a party is clear.[21] Unlike the dissent and the plurality of the Eighth Circuit in Wersal, we decline to address hypothetical situations involving potential frequent litigants and single-judge counties. See Dissent at 1168; Wersal, 674 F.3d at 1027-28 (posing the hypothetical that “candidates and judges would be free *1160 to endorse individuals who would become frequent litigants in future cases, such as county sheriffs and prosecutors”). The Arizona defendants have not offered any evidence nor argued that these concerns exist, cf. Siefert, 608 F.3d at 987, though they bear the burden of demonstrating that the Rules survive strict scrutiny. We decline to speculate on whether such a problem would exist in the Arizona judicial elections affected by these Rules.
We hold Rule 4.1(A)(5), which prohibits a judicial candidate from “actively tak[ing] part in any political campaign other than his or her own campaign for election, reelection, or retention in office” to be unconstitutional because it is over-broad. By its terms, it is not limited to restrictions on participation in political campaigns on behalf of persons who may become parties to a suit, but may also include political campaigns on ballot propositions and other issues, including political campaigns for ballot propositions that present no risk of impartiality towards future parties. Thus, Rule 4.1(A)(5) unconstitutionally prohibits protected speech about legal issues. White I, 536 U.S. at 776-78,122 S.Ct. 2528.
IV.
For these reasons, we reverse the district court’s grant of summary judgment to the Arizona defendants. We hold that strict scrutiny applies and that the challenged portions of the Arizona Code of Judicial conduct unconstitutionally restrict the speech of non judge judicial candidates. We remand the case for further proceedings consistent with this opinion. REVERSED and REMANDED.

. Arizona Supreme Court and appellate court judges and judicial officers in counties with a population greater than 250,000 (and smaller counties that vote to do so) use a system of merit selection with retention elections. Ariz. Const, art. VI, §§ 37, 38, 40.

. Ariz.Rev.Stat. Ann. § 17A, Sup.Ct. Rules, Rule 81, Code of Jud. Conduct (2009). After Wolfson filed his complaint, the Code was revised, effective September 1, 2009. The revision to the Code recodified and renumbered the Rules, but did not alter the substance of the challenged Rules at issue in this appeal. See Wolfson v. Brammer, 616 F.3d 1045, 1053 (9th Cir.2010) (Wolfson I).

. “An unsuccessful judicial candidate who is a lawyer and violates this code may be subject to discipline under applicable court rules governing lawyers.” Ariz.Rev.Stat. Ann. § 17A, Sup.Ct. Rules, Rule 81, Code of Jud. Conduct, Canon 4, cmt. 2 (2009).

. "Wolfson alleges that he wanted personally to solicit campaign contributions at live appearances and speaking engagements, and by making phone calls and signing his name to letters seeking donations. Wolfson I, 616 F.3d at 1052. He also alleges that he wanted to endorse other candidates for office and support their election campaigns. Id.

. Wolfson voluntarily dismissed all claims against a third defendant, the Arizona Supreme Court Disciplinary Commission. Wolfson v. Brammer, 822 F.Supp.2d 925, 926-27 (D.Ariz.2011) (Wolfson II).

. Arizona's Code closely tracks the American Bar Association’s Model Code of Judicial Conduct, Rule 4.1 (2011).

. We find no Supreme Court authority extending the limited First Amendment protection for public employee speech to judicial candidate speech, and we decline to answer the hypothetical question of whether sitting judges are sufficiently similar to rank-and-file government employees to warrant such application. See, e.g., White I, 536 U.S at 796, 122 S.Ct. 2528 (Kennedy, J., concurring). We *1152 also find no Supreme Court authority extending the limited First Amendment protection for employee speech to a private citizen who is not currently a government employee but merely seeks to become one. Id. (“Petitioner Gregory Wersal was not a sitting judge but a challenger; he had not voluntarily entered into an employment relationship with the State or surrendered any First Amendment rights. His speech may not be controlled or abridged in this manner."). Nor do we take a position on a question explicitly unresolved by the Supreme Court in White I: whether the First Amendment “requires campaigns for judicial office to sound the same as those for legislative office." Id. at 783, 122 S.Ct. 2528 (majority opinion).

. “When a person becomes a judicial candidate, this canon becomes applicable to his or her conduct." Ariz.Rev.Stat. Ann. § 17A, Sup.Ct. Rules, Rule 81, Code of Jud. Conduct, Canon 4, cmt. 2 (2009).

. See also Carey, 614 F.3d at 200 (“[T]his argument [that the solicitation clause is akin to a restriction on political donation subject to less rigorous scrutiny] gives analogy a bad name. The solicitation clause does not set a contribution limit, as in McConnell and similar cases. It flatly prohibits speech, not donations, based on the topic (solicitation of a contribution) and speaker (a judge or judicial *1154 candidate) — precisely the kind of content-based regulations that traditionally warrant strict scrutiny.” (internal citation omitted) (emphasis in original)).

. Nor are we persuaded by the Commission defendants' argument that the rules prohibiting solicitation "do not involve core political speech,” and that "[wjhen a candidate says ‘give me money,’ he adds nothing to the full and fair expression of ideas that the First Amendment protects." This is a content-based distinction of pure speech that is not excepted from full First Amendment protection. See, e.g., Int'l Soc. for Krishna Consciousness, Inc. v. Lee, 505 U.S. 672, 677, 112 S.Ct. 2701, 120 L.Ed.2d 541 (1992) ("It is uncontested that the solicitation at issue in this case is a form of speech protected under the First Amendment.”); Vill. of Schaumburg v. Citizens for a Better Env’t, 444 U.S. 620, 629, 100 S.Ct. 826, 63 L.Ed.2d 73 (1980) ("[S]oliciting funds involves interests protected by the First Amendment's guarantee of freedom of speech.”); Bates v. State Bar of Ariz., 433 U.S. 350, 363, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977) (observing that the First Amendment protects speech "in the form of a solicitation to pay or contribute money”). This argument is wholly without merit.

. In this vein, the Commission defendants argue that endorsements have “limited communicative value” other than the desire to be a political powerbroker.

. “Even if a judicial candidate campaigned solely on the basis of his hatred and vindictiveness toward Joe Smith and the candidate were elected, no due process problem would be presented if Joe Smith were never involved in litigation or other proceedings before that judge.” Id.

. See also Geary v. Renne, 911 F.2d 280, 294 (9th Cir. 1990) (en banc) (Reinhardt, J., concurring), vacated on other grounds, 501 U.S. 312, 111 S.Ct. 2331, 115 L.Ed.2d 288 (1991) ("The State of California cannot have it both ways. If it wants to elect its judges, it cannot deprive its citizens of a full and robust election debate.... Whether a judicial candidate wishes to make his views known on those issues during the electoral process is another matter. So is the question whether it is proper for him to do so. But those are all problems inherent in California’s decision to conduct judicial elections. If California wishes to elect its judges, it must allow free speech to prevail in the election process.”).

. See, e.g., Michael R. Dimino, Pay No Attention To That Man Behind The Robe: Elections, The First Amendment, and Judges As Politicians, 21 Yale L. & Pol’y Rev. 301, 356 (2003) ("[SJtates that have rejected the federal model of judicial independence have necessarily accepted (if not celebrated) that some level of electoral accountability will play a part in their judges’ decisions. Accordingly, because there is nothing ‘corrupt’ about the functioning of democracy, limiting speech so as to conceal the part that electoral politics does play in judicial decisions cannot be constitutionally justified.”).

. The reality is that the Rules do not "change the circumstances or pressures that cause the candidates to want to make [prohibited] statements,” and that "[j]udicial campaign speech codes are therefore much more about maintaining appearances by hiding reality than about changing reality.” Fried-land, 104 Colum. L.Rev. at 612.

. Wolfson argues that Rule 4.1(A)(4) is also a restriction on solicitation, because he wishes to solicit contributions to his own campaign committee, which he considers to be a "political organization.” But the Code explicitly carves out a judicial candidate's campaign committee from the definition of “political organization.” See Ariz.Rev.Stat. Ann. § 17A, Sup.Ct. Rules, Rule 81, Code of Jud. Conduct, "Terminology” (2009). Therefore, we analyze Rule 4.1(A)(4) alongside (A)(2)-(3) and (5), because it prohibits a judicial candidate from soliciting funds on behalf of or donating to a specific political organization or candidate— classic political campaigning activities.

. The lack of a non-disclosure-to-the-candidate requirement in Arizona’s Code presents the opposite situation of that in White II, where appellants challenged the fact that they *1158 could not solicit from large groups or via signed appeal letters. The Eighth Circuit found that the prohibition on disclosing to a candidate who contributed and who rebuffed meant the clause was "barely tailored at all to serve [the end of impartiality as to parties in a particular case]” or an interest in “open-mindedness.” 416 F.3d at 765-66.

. Indeed, the Eighth Circuit upheld the Minnesota solicitation clause even under strict scrutiny precisely because the challenged clause only prohibited direct, in-person solicitation, while the rest of Minnesota's Code of Judicial Conduct permitted solicitation of groups and of a judge's intimates. Wersal, 674 F.3d at 1028-29. That court distinguished the outcome from that in White II, where an earlier version of the state’s Code of Judicial Conduct prohibited group solicitation and banned judges and candidates from signing fund appeal letters. Id. at 1029. Direct personal solicitation "gives rise to a greater risk of quid pro quo,” id., but the scope of Arizona’s solicitation clause is broader than Minnesota’s and we must consider all of the affected speech.

. Judge Loken, joined by Judge Wollman, concurred in the result but agreed with the plurality's judgment on the separate ground that the endorsement clause served the distinct compelling state interest in "protecting the political independence of its judiciary.” Id. at 1033 ("An endorsement links the judicial candidate’s political fortunes to a particular person, who may then come to hold office in a coordinate branch of government. This *1159 is antithetical to any well considered notion of judicial independence- — that we are a 'government of laws, not of men.' ”) (Loken, J., concurring.).

. The Wersal plurality concluded that the Minnesota endorsement clause was not underinclusive but only by reference to what it restricted: "endorsements for other candidate[s] for public office.” Id. at 1027 (internal quotation marks omitted) (emphasis added). That plurality noted that a separate clause in Minnesota’s Code of Judicial Conduct prevented a judge or judicial candidate from making any statement that would “reasonably be expected to affect the outcome or impair the fairness of a matter pending or impending in any court,” and reasoned that the two clauses read together meant that a judicial candidate was prevented from making any biased statement about a party or potential party, whether or not the target of the speech had become a candidate for public office at the time of the statement. Id. We are concerned about the temporal dimension of a non-judge candidate’s speech, rather than the candidate status of its target.

. See, e.g., Friedland, 104 Colum. L.Rev. at 614 ("[T]he proper response to judicial campaign speech that could threaten Fourteenth Amendment due process rights may be to allow the speech and then, if a case arises in which the judge’s former campaign speech poses a problem, to assign that case to another judge.”).